[Civ. No. 3602.   Fourth Dist.   July 9, 1946.]

C. LEON DeARYAN, Appellant, v. CITY OF SAN DIEGO et al., Respondents.

C. Leon DeAryan, in pro. per., for Appellant.

J. F. DuPaul, City Attorney, and Bertrand L. Comparet, Deputy City Attorney, for Respondents.

BARNARD, P. J.—The plaintiff brought this action to correct certain alleged abuses and violations of law in connection

with parking meters which had been installed in certain sections by the defendant city.

The complaint, after setting out the ordinances under which the parking meters were installed, alleged on information and belief that several thousand dollars a year is being collected from these meters beyond the amount necessary to meet the expenditures provided for in section 15 of the ordinance, which requires such receipts to be placed in a special fund and paid out only for certain purposes; that the city is operating the meters at a profit; that the profit for the fiscal year 1942-1943 was about $43,000, which amount was turned into the general fund; that the profit for the fiscal year 1943-44, during which the action was filed, would be approximately $120,000 and would be so used; that the ordinance is being wrongfully administered and the funds produced from the meters are being applied to uses and purposes other than those permitted by the ordinance; and that the parking meters are so constructed that they do not deliver the amount of parking time indicated by the schedules of parking charges attached to them, with the result that there is an unlawful exaction of contributions for parking services which are not delivered. The prayer is for an order directing the city to rectify the abuses and violations of law alleged, or prohibiting the city from operating the meters for the collection of taxes in violation of the ordinance, and prohibiting the city from using "parking meters which are not mechanically constructed to deliver the parking time as announced and advertised."

The answer denied the material allegations of the complaint and alleged that the cost of administration of the ordinances and the expenditures authorized by them have exceeded the amounts received from the parking meters, and that there is nothing on any of the parking meters which is deceptive or which states or indicates that one is entitled to an amount of parking time which is not delivered. At the trial, there was evidence of the amounts received by the city from the operation of these parking meters during three fiscal years, but no evidence was received as to the costs and expenditures during those three years. Evidence was received as to the estimated receipts and estimated costs for the fiscal year 1944-45, during which year the trial took place. The court found that these ordinances were passed in good faith for the purpose of regulating traffic and the parking of vehicles in the public streets

within certain zones, and not for the purpose of collecting a tax for revenue purposes; that the requirement of a fee from persons parking vehicles adjacent to the parking meters was and is for the purpose of defraying the cost of such regulation; that it was and is impossible to determine in advance the exact cost of regulation of said traffic and parking of vehicles, and impossible to determine in advance the receipts from the meters during any future period with sufficient accuracy to permit a reduction in the fee charged, even if it were mechanically possible to rebuild the meters so this could be done; that the meters cannot be adjusted to that end; that such a change could only be accomplished by substituting new and different parts in the mechanism of the meters; that there is no evidence that such new and different parts are obtainable; that the estimated amounts of receipts from the meters for the fiscal year 1944-45 is $240,000; that the estimated costs for the regulation of traffic and the parking of vehicles in said parking meter zones for the fiscal year 1944-45, "the only year for which proof was submitted," are certain named amounts for the operation of parking meters and the regulation of traffic and parking, for the services of the treasurer's department, traffic engineer, public works department, police department, and for certain named depreciation, these amounts making a total estimated cost for that year of $198,980.35; that the city also incurs and pays additional costs each year in connection with the city prosecutor's office, the municipal courts, the city manager's department, the city auditor's department, the city purchasing department, and for depreciation on buildings and fixtures not covered in the enumerated items; that all of these services are to some extent used in the regulation of said traffic and parking; that some portion of the cost of these agencies and items is properly chargeable as a cost of the regulation of traffic and the parking of vehicles within the parking meter zones; and that the exact amount of such additional costs was not proved. It was further found that in certain zones, where two-hour parking is permitted, the parking meters are so constructed that they may be made to register up to one hour by depositing a five-cent coin or by depositing five one-cent coins; that each one-cent coin deposited for that first hour will give twelve minutes of parking; that by the depositing of an additional five-cent coin the meters will register two hours of parking time, but that these two-hour type meters cannot be made to register

any time in excess of one hour by the deposit of any number of one-cent coins; and that there is clearly displayed upon each meter a metal plate containing directions, as follows:

"2 hour parking
"12 minutes—1¢
"24 minutes—2¢
"36 minutes—3¢
"48 minutes—4¢
"60 minutes—5¢ or 1 nickel
"2 hours—2 nickels."

(On one type of two-hour parking meter in use the last line of these directions reads: "120 minutes 2 nickels.") As conclusions of law, it was found that no money has been or is being unlawfully exacted from any person by reason of the installation and use of these parking meters, and that no money which has been received by the city from that source has been or is being improperly or unlawfully used or expended. Judgment was entered in favor of the defendants and the plaintiff has appealed.

No attack is here made upon the legality of the ordinances here in question, as a part of the regulation of traffic, and the only points raised by the appellant are that the receipts from these parking meters are greatly in excess of the costs for which such receipts may lawfully be expended, under the ordinance, and that the meters themselves do not sufficiently indicate the parking time which will be permitted in return for various amounts deposited, with the result that the public is deceived and defrauded by being induced to deposit some coins for which they get nothing. While not clearly expressed, the contention seems to be that the court's findings with respect to these two matters are not supported by the evidence.

■ With respect to the first point, the only specific contention is that an excessive charge for depreciation on automotive equipment used by the police department in connection with parking meter enforcement appears in that part of the estimated expenditures which was itemized. This is based on the fact that the chief of police testified that the estimated depreciation on motorized equipment used in connection with enforcing the parking meter ordinance was $7,200 a year, and that the estimated depreciation on all motorized equipment used by the police force was from $25,000 to $27,000 a

year. While this seems proportionately large there was no evidence to the contrary. Moreover, that matter was a comparatively small part of the cost and expenditures even as far as they were itemized.

Section 15 of the ordinance in question, as amended, provides that receipts from this source may be used not only in defraying the expenses of installation, operation and control of such parking spaces and parking meters, but also those incurred in the control of traffic which may affect or be affected by the parking of vehicles in the parking meter zones thus created, including those incurred in connection with painting lines and signs, maintaining mechanical traffic signals and other expenses of regulating traffic and enforcing traffic regulations with respect to all traffic which may affect or be affected by the parking of vehicles in parking meter zones. This ordinance permits the use of the money thus received for general traffic regulation and control in the areas in question, all of which is a part of the problem involved and designed to be benefited by the ordinance. This is one entire problem in the congested areas and business districts which are affected by the ordinance and, as the evidence indicates, there are many matters of expense incident to the problem as a whole, aside from those directly connected with the operation of the meters, which were not segregated and itemized in such figures and records as were produced in evidence. Moreover, such figures as were produced were only estimates. A reasonable variance must necessarily be allowed in such cases, so long as the object of the ordinance is the regulation of traffic and not the raising of revenue, and as long as any possible surplus or profit is both incidental and not disproportionate to the cost and scope of the regulation thus carried into effect. It has been held that such regulation of parking and control of traffic may well justify a fee system intended and calculated to hasten the departure of parked vehicles in congested areas, as well as to defray the cost of installation and supervision. (*In re Opinion of the Justices,* 297 Mass. 559 [8 N.E.2d 179]; *Bowers* v. *City of Muskegon,* 305 Mich. 676 [9 N.W.2d 889].) In view of the general situation and the nature of the evidence in the record it cannot be held that the court's findings in this regard are without support, since the appellant failed to meet the burden of proof resting upon him.

The other contention, that these meters are calculated

to deceive the public in that they do not correctly indicate the parking time which will be allowed for particular payments, cannot be sustained. The argument is that since the statement on the meters informs the public that parking privileges during the first hour may be obtained by depositing one cent for each twelve minutes desired, a motorist would be likely to assume that, in zones where two-hour parking is permitted and where he intends to remain more than one hour and not as much as two hours, he could also secure extensions beyond the first-hour period by continuing to deposit one cent for each twelve minutes desired. Nothing on the meters informs the public to that effect and the directions plainly state that a second hour will cost five cents, with nothing to suggest or indicate that additional time over the first hour is offered except the full period of one hour. No period less than an hour is offered, after the first hour, and the objection seems to be that the statements on the meters mean exactly what they say. The periods of time offered are stated with their prices and no necessity appears for also stating other periods of time which are not offered. Moreover, the policy of not offering shorter periods during the second hour is consistent with the general purpose and design of the ordinance to hasten the departure of parked cars in congested areas, and to offer parking opportunities to as many different people as possible. Nothing appears either in law or in the evidence to invalidate the findings of the court in this respect.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.