[Civ. No. 6495. Fourth Dist. Feb. 28, 1961.]

OLGA MERVYNNE, Petitioner and Respondent, v. PHILLIP
ACKER, as City Clerk, etc., Appellant; UNITED UP-
TOWN MERCHANTS ASSOCIATION, INC. (a Cor-
poration), Intervener and Respondent.

J. F. DuPaul, City Attorney (San Diego), Alan M. Firestone, Assistant City Attorney, Frederick B. Holoboff, Chief Deputy City Attorney, and Robert J. Cooney, Deputy City Attorney, for Appellant.

W. E. Starke for Petitioner and Respondent.

Richards & Bartell, Richards & Rand and William R. Richards for Intervener and Respondent.

SHEPARD, J.—This is an appeal from a judgment granting a peremptory writ of mandate ordering appellant to process the signatures on an initiative petition.

The facts presented by the record before us are as follows: The City Council of the City of San Diego (hereinafter called "City") has heretofore enacted certain ordinances[1] providing for the regulation of parking on the public streets of City with the aid of parking meters. These ordinances are incorporated in the Municipal Code of City.[2] These ordinances were passed by the city council pursuant to authority granted by section 22508 of the Vehicle Code. They limit the time for parking on certain public streets of City and provide a convenient means of checking the parking time by the use of parking meters, into which meters the person parking a vehicle is required to deposit a coin. The funds derived from such deposits are required to be recorded in a special account by the city treasurer and are devoted solely to matters connected with the regulation of traffic. The ordinances also provide civil and criminal penalties for violation thereof.

August 1, 1960, an initiative petition proposing an ordinance to repeal all of said parking meter ordinances was submitted to appellant. The petition purported to be signed by more than 31,000 qualified electors of City. On advice of the city attorney that the proposed ordinance for repeal of the parking meter ordinances was not a proper subject of the initiative, appellant refused to process the names on the petition. Respondent then filed her action for a writ of mandate. After hearing, a peremptory writ was granted by the trial court, and this appeal was taken.

Appellant contends that the proposed repeal of the parking meter ordinances is not, under the present circumstances, the proper subject of an initiative petition in that the control of vehicular traffic on the public streets and highways of California is of statewide concern; that this state has fully occupied the field of regulation of vehicular traffic on the public highways; and that the granting of power to locally enact

---

[1] Ordinance 2117 (N.S.), the basic ordinance establishing the use of parking meters, was adopted April 22, 1941. Ordinance 2430 (N.S.) amending Ordinance 2117 was adopted April 28, 1942. Ordinance 3167 (N.S.) amending Ordinance 2117 was adopted April 16, 1946. Ordinances 8123, 8143 and 8153 (N.S.) also sought to be repealed, amended sections 82.06, 86.13, 82.07, 86.14 and 86.15 respectively of the Municipal Code in June and July of 1959.

[2] Section 81.01.15 of chapter 8, article I, sections 82.04, 82.05, 82.06, 82.07, 82.08 and 82.09 of chapter 8, article II, and sections 86.11, 86.12, 86.13, 86.14, 86.15, 86.16, 86.17 and 86.18 of chapter 8, article VI; and amending Ordinances 8123, 8143 and 8153 of the San Diego Municipal Code.

ordinances with respect to parking meters is restricted by Vehicle Code, section 22508, to the council of City.

PARKING METERS AN ADJUNCT OF TRAFFIC CONTROL

We think there can be no serious question but that parking meters function primarily as an aid to traffic control. They have long been recognized judicially as a legitimate aid to traffic regulation. (*De Aryan* v. *City of San Diego,* 75 Cal. App.2d 292 [170 P.2d 482]; *Downing* v. *Municipal Court,* 88 Cal.App.2d 345 [198 P.2d 923].)

MATTERS OF GENERAL STATE CONCERN ARE NOT MUNICIPAL AFFAIRS

What is a "municipal affair" is not always easy to define. Often a close analysis of the particular "affair" under consideration is necessary. (*Brewer* v. *Feigenbaum,* 47 Cal. App.2d 171, 175 [1] [117 P.2d 737]; *Butterworth* v. *Boyd,* 12 Cal.2d 140, 147 [2] [82 P.2d 434, 126 A.L.R. 838].)

However, the principle that when the state has legislatively occupied a field of general state concern, then the matters in that field ordinarily cease to be "municipal affairs" has been enunciated in many decisions. For examples, see *Abbott* v. *City of Los Angeles,* 53 Cal.2d 674, 681 [3-7] [3 Cal. Rptr. 158, 349 P.2d 974] (registration of ex-convicts); *Wilson* v. *Beville,* 47 Cal.2d 852, 856 [5] [306 P.2d 789] (eminent domain); *Agnew* v. *City of Los Angeles,* 51 Cal.2d 1, 5 [2-3] [330 P.2d 385] (electrical contractor's license); *Los Angeles Railway Corp.* v. *City of Los Angeles,* 16 Cal.2d 779, 783 [2, 3] [108 P.2d 430] (streetcar crew regulation by Railroad Commission); *Kleiber* v. *City & County of San Francisco,* 18 Cal.2d 718, 723 [117 P.2d 657] (housing authority); *Housing Authority of the City of Eureka* v. *Superior Court,* 35 Cal.2d 550, 559 [9-10] [219 P.2d 457] (housing authority); *Dairy Belle Farms* v. *Brock,* 97 Cal.App.2d 146, 156 [4b] [217 P.2d 704] (milk regulation).

TRAFFIC REGULATION UNDER EXCLUSIVE STATE CONTROL

The right of the state to exclusive control of vehicular traffic on public streets has been recognized for more than 40 years. While local citizens quite naturally are especially interested in the traffic on the streets in their particular locality, the control of such traffic is now a matter of statewide concern. Public highways belong to all the people of the state. Every citizen has the right to use them, subject to legislative regulation. Traffic control on public highways is not a "munic-

ipal affair'' in the sense of giving a municipality (whether holding a constitutional charter or not) control thereof in derogation of the power of the state. (*Ex parte Daniels,* 183 Cal. 636, 639-641 [1-3] [192 P. 442, 21 A.L.R. 1172] [speed]; *In re Murphy,* 190 Cal. 286, 287-288 [1] [212 P. 30] [reckless driving]; *Atlas Mixed Mortar Co.* v. *City of Burbank,* 202 Cal. 660, 662 [1] [262 P. 334] [weight]; *Rafferty* v. *City of Marysville,* 207 Cal. 657, 665 [3] [280 P. 118] [safe construction]; *Sincerney* v. *City of Los Angeles,* 53 Cal.App. 440, 447 [6] [200 P. 380] [telephone poles in street]; *Pacific Tel. & Tel. Co.* v. *City & County of San Francisco,* 51 Cal.2d 766, 768 [1a] [336 P.2d 514] [telephone lines in street]; *Biber Electric Co., Inc.* v. *City of San Carlos,* 181 Cal.App.2d 342, 343 [1] [5 Cal.Rptr. 261] [license]; *Wilton* v. *Henkin,* 52 Cal.App.2d 368, 372 [2] [126 P.2d 425] [pedestrian crosswalks]; *Pipoly* v. *Benson,* 20 Cal.2d 366, 369 [3] [125 P.2d 482, 147 A.L.R. 515] [pedestrian crosswalks].)

EXCLUSIVE AUTHORITY IN CITY COUNCIL BARS USE OF INITIATIVE

■ When, in a matter of statewide concern, the state Legislature has specifically delegated a particular authority to the governing board, our courts have uniformly held that the initiative processes do not ordinarily apply. As was said in *Riedman* v. *Brison,* 217 Cal. 383, 387-388 [2-3] [18 P.2d 947]:

''We are therefore of the view, without further citation of the many authorities on the question, that the legislature, in its general act, which is superior to and which controls the charter provisions in the matter of withdrawal from the district, has designated the city council of the city of Long Beach as the state agency which may initiate proceedings for the withdrawal of the municipality from the Metropolitan Water District of Southern California, of which it at the present time forms a part. The provisions of the charter of the city relating to the initiative apply only to its legislative acts which, unless otherwise authorized, can relate only to municipal affairs, of which this is not one. [Citation.] The matter to which the petition in the hands of the city clerk relates, not being a matter of municipal legislation, that official has no legal duty to perform in relation to it under the charter.''

See also *Alexander* v. *Mitchell,* 119 Cal.App.2d 816, 821 [260 P.2d 261]; *Barlotti* v. *Lyons,* 182 Cal. 575, 584 [3] [189 P. 282]; *Mitchell* v. *Walker,* 140 Cal.App.2d 239, 244 [8] [295 P.2d 90].

### City Constitutional Charter Authority Restricted to "Municipal Affairs"

■ Respecting the matter with which we are here concerned, our California Constitution provides as follows:

Article IV, section 1: ". . . The initiative and referendum powers of the people are hereby further reserved to the electors of each county, city and county, city and town of the State to be exercised under such procedure as may be provided by law. . . .

Article XI, section 8, subd. (j): ". . . It shall be competent in any charter framed under the authority of this section to provide that the municipality governed thereunder may make and enforce all laws and regulations *in respect to municipal affairs*, subject only to the restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. . . ." (Italics ours.)

City's charter, section 2, provides in part:

"The City of San Diego . . . shall have the right and power to make and enforce all laws and regulations *in respect to municipal affairs*, subject only to the restrictions and limitations provided for in this Charter; . . ." (Italics ours.)

It is clear, not only from the direct language of the foregoing sections of the state Constitution and of City's charter, as well as from the authorities hereinbefore cited, that the legislative power of a city, whether operating under a constitutional charter or not, is restricted to "municipal affairs." The legislative expression of this principle is carried into the Vehicle Code in section 21, which provides:

"The provisions of this code are applicable and uniform throughout the State and in all counties and municipalities therein, *and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized herein.*" (Italics ours.)

#### Initiative and Referendum Liberal Application

■ The exercise of initiative and referendum is one of the most precious rights of our democratic process. Since under our theory of government all the power of government resides in the people, the power of initiative is commonly referred to as a "reserve" power and it has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, our courts will preserve

it. (*Blotter* v. *Farrell,* 42 Cal.2d 804, 809 [3] [270 P.2d 481] ; *McFadden* v. *Jordan,* 32 Cal.2d 330, 332 [1] [196 P.2d 787] ; *Martin* v. *Smith,* 176 Cal.App.2d 115, 117 [1-3] [1 Cal.Rptr. 307].)

### LIMITED PARKING METER CONTROL DELEGATED

Sections 385 and 22508 of the Vehicle Code read as follows:

"§ 385. Local authorities. 'Local authorities' means the legislative body of every county or municipality having authority to adopt local police regulations."

"§ 22508. Parking Meter Zones. Local authorities may by ordinance provide for the establishment of parking meter zones, and cause streets and highways to be marked with white lines designating parking spaces and requiring vehicles to park within the parking spaces, except that an ordinance is not effective with respect to any state highway until the proposed ordinance has been submitted to and approved in writing by the Department of Public Works. The proposed ordinance shall be submitted to the department only by action of the local legislative body and the proposed ordinance shall be submitted in complete draft form."

Viewing the language of sections 385 and 22508 in the light of the principles of construction we have hereinbefore noted, we are compelled to the conclusion that the Legislature did not "abandon" that portion of the traffic-regulation field relating to parking meters so as to give general, unrestricted control to cities as such. On the contrary, the Legislature appears to have directly occupied that field and to have especially delegated to the "legislative body" of City, to wit: The city council, a partially restricted authority on behalf of the state to exercise this control. Any attempt at a different interpretation immediately brings us into direct conflict with the literal wording of the sections. When the legislative body is specifically designated in a statute to perform an act, that designation is generally deemed exclusive unless the wording of the Act is reasonably susceptible of a contrary intention. The term "legislature" or "legislative body" normally means the representative legislative body, and not the state or political subdivision itself. (*Barlotti* v. *Lyons, supra*; *Alexander* v. *Mitchell, supra,* 821 [2] ; *Geiger* v. *Board of Supervisors of Butte County,* 48 Cal.2d 832, 838 [8] [313 P.2d 545] ; *Simpson* v. *Hite,* 36 Cal.2d 125, 129 [2] [222 P.2d 225].)

Furthermore, any construction of a statute should be approached with a view to reasonable results, if possible. As was said in *County of Alameda* v. *Kuchel,* 32 Cal.2d 193, 199 [3] [195 P.2d 17]:

"It is a cardinal rule that statutes should be given a reasonable interpretation and in accordance with the apparent purpose and intention of the law makers. Such intention controls if it can be reasonably ascertained from the language used."

 This court would be naive indeed if it failed to recognize that the constantly shifting sands of traffic flow require some degree of fluidity in amendment of regulations. If the initiative were applied, changes would ordinarily require a new vote of the people on each change. Each petition for a new change would involve cumbersome delay and heavy expense, especially in a city of large population like San Diego. If the change affected a state highway, it would have to be referred, after the signature processing of each petition, to the state Department of Public Works. If the state Department of Public Works required a small change, an entirely new petition would have to be circulated, and again processed. Obviously the initiative lends itself more properly to basic changes in law policy and not to those phases of regulation which by their very nature resemble to a great degree the detailed attention normally ascribed to the administrative process, ordinarily the subject of executive action, as is true in the type of regulation here under discussion. (*Chase* v. *Kalber,* 28 Cal.App. 561, 573-574 [153 P. 397].)

Thus, we find, in the case here at bar, that the Legislature has, by apparently careful wording of section 22508, literally and specifically delegated the power over parking-meter traffic regulation to the city council. Reasonable construction dictates that this wording was an intended retention of control in the state so as to give the necessary fluidity to changes which are so frequently required in such a field. It must be remembered that this is in nowise a disenfranchisement of the electors, nor is it a derogation of their constitutionally reserved power of the initiative, for the initiative is still retained for the whole people of the state and by initiative the people of the state may, if they wish, change the whole policy of traffic regulation. It simply means that since the subject of traffic regulation on the public streets and highways of the state is a matter of statewide concern, it is not a "municipal affair" unless the state shall completely abandon all or some part of that field. Under the constitutional and statutory provisions here appli-

cable, the initiative can come into play only through its use by all of the people of the state, and not by some local segment thereof.

The judgment is reversed.

Griffin, P. J., and Coughlin, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 26, 1961. Schauer, J., and Peters, J., were of the opinion that the petition should be granted.