[Civ. No. 5606. Fifth Dist. June 30, 1980.]

GREGORIA ORTIZ et al., Petitioners, v.
BOARD OF SUPERVISORS OF MADERA COUNTY et al.,
Respondents.

COUNSEL

Pamela J. Stanley, Frank T. Ramirez, Ramon P. Arias, David O. Hernandez and Dennis De Leon for Petitioners.

Mark A. Wasser, County Counsel, for Respondents.

OPINION

**HOPPER,** Acting P. J.—In this case we consider the validity of an ordinance adopted by the Board of Supervisors (hereinafter Board) of Madera County redistricting supervisorial districts in the County of Madera (hereinafter County). For reasons hereinafter discussed we conclude that the ordinance was ineffective for use in the June 3, 1980, election because a redistricting ordinance may not go into effect immediately.

On February 4, 1980, the Board adopted ordinance No. 355C. Section 6 of that ordinance provided that the ordinance shall take effect immediately pursuant to subdivisions (a) and (b) of Government Code section 25123.[1]

Petitioners, who are County residents, brought suit on April 1, 1980, before the United States District Court for the Eastern District of California, challenging the ordinance as being violative of the United States Constitution as well as of those provisions of the California Constitution reserving the power of referendum to the people of this state. The United States District Court issued a temporary restraining order enjoining respondents from proceeding with preparations for the June 3, 1980, supervisorial primary. That temporary restraining order was dissolved because the district court, under the doctrine of abstention, ruled it more appropriate for the state courts to consider the state constitutional question of whether an ordinance, duly passed by the board of supervisors of any county redistricting the supervisorial district within that

---

[1]Government Code section 25123 provides in pertinent part: "All ordinances shall become effective 30 days from the date of final passage, except the following ordinances which shall take effect immediately:

"(a) Those calling or otherwise relating to an election.

"(b) Those specifically required by this code or by any other law to take immediate effect."

county, may be enacted to become effective immediately as intended by respondents.

Petitioners then sought mandate in the California Supreme Court, asserting the same contentions reviewed by the federal court. The California Supreme Court denied petitioners' application for a temporary restraining order staying the June 3, 1980, primary election and instead directed this court to issue an alternative writ of mandamus to be heard when the proceeding was ordered on our calendar. On May 12, 1980, this court also denied the request for a stay order and ordered respondent to show cause on June 12, 1980, why the relief prayed for in the above entitled matter should not be granted.

The Board chose to enact the ordinance as it did in an attempt to make that ordinance effective immediately as of the date of its adoption on February 4, 1980, which was the last date for any change of supervisorial districts under Elections Code section 35006 for the June 3, 1980, election.

Petitioners contend that by making the ordinance immediately effective they were deprived of their right to exercise the referendum reserved under the California Constitution.[2] We agree.

We hold that a redistricting ordinance may not go into effect immediately.

The Board argues: (1) that Government Code section 25123 should be broadly construed and that the ordinance is effective immediately under subdivision (a) and subdivision (b); (2) that the opinion of the Attorney General (42 Ops.Cal.Atty.Gen. 137 (1963)) upon which petitioners rely was decided prior to certain constitutional changes which render use of that opinion questionable; (3) that California Constitution article II, section 9, subdivision (a), applies only to state statutes and not county ordinances; and (4) that petitioners are further barred from

---

[2]Pertinent constitutional provisions include: Article II, section 9, subdivision (a): "The referendum is the power of the electors to approve or reject statutes or parts of statutes except urgency statutes, statutes calling elections, and statutes providing for tax levies or appropriations for usual current expenses of the State."

Article II, section 11: "Initiative and referendum powers may be exercised by the electors of each city or county under procedures that the Legislature shall provide. . . ."

Article IV, section 1: "The legislative power of this state is vested in the California Legislature which consists of the Senate and Assembly, but the people reserve to themselves the powers of initiative and referendum."

challenging the ordinance as petitioners chose not to pursue whatever referendum rights they may have had. We are not persuaded.

■ By the time this proceeding could be calendared, briefed and argued, there was not sufficient time before the June 3, 1980, election took place for this court to pass upon the issues involved or for a decision to become final under the law. In a sense the matter is now moot because obviously the court may not require the county clerk to refrain from the use of the ordinance at an election which has already taken place. However, the basic issues are first impression and are issues of general public interest throughout the state which are likely to recur. Consequently, we exercise our inherent discretion to resolve the issues. (*Daly* v. *Superior Court* (1977) 19 Cal.3d 132, 141 [137 Cal.Rptr. 14, 560 P.2d 1193]; *Zeilenga* v. *Nelson* (1971) 4 Cal.3d 716, 719 [94 Cal.Rptr. 602, 484 P.2d 578]; *In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737]; *County of Madera* v. *Gendron* (1963) 59 Cal.2d 798, 804 [31 Cal.Rptr. 302, 382 P.2d 342, 6 A.L.R.3d 555].)

■ The California Supreme Court has pointed out in *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 219 [149 Cal.Rptr. 239, 583 P.2d 1281],[3] that "[i]t is a fundamental precept of our law that, although the legislative power under our constitutional framework is firmly vested in the Legislature, 'the people reserve to themselves the powers of initiative and referendum.' (Cal. Const., art. IV, § 1.) It follows from this that '"[the] power of initiative must be liberally construed . . . to promote the democratic process."' [Citations.]" As our Supreme Court has further said: "The amendment of the California Constitution in 1911 to provide for the initiative and referendum signifies one of the outstanding achievements of the progressive movement of the early 1900's. Drafted in light of the theory that all power of government ultimately resides in the people, the amendment speaks of the initiative and referendum, not as a right granted the people, but as a power reserved by them. Declaring it 'the duty of the courts to jealously guard this right of the people' (*Martin* v. *Smith* (1959) 176 Cal.App.2d 115, 117 [1 Cal.Rptr. 307]), the courts have described the initiative and referendum as articulating 'one of the most precious rights of our democratic process' (*Mervynne* v. *Acker, supra,* 189 Cal.App.2d 558, 563 [11 Cal.Rptr. 340]). '[I]t has long been

---

[3]This case involved an initiative rather than a referendum. Nevertheless, because the nature of the initiative and the referendum are identical insofar as the power reserved is concerned any discussion in the decisional law regarding the initiative also applies to the referendum.

our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it.' (*Mervynne v. Acker, supra*, 189 Cal.App.2d 558, 563-564; *Gayle v. Hamm, supra*, 25 Cal.App.3d 250, 258 [101 Cal.Rptr. 628].)" (*Associated Home Builders etc., Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 591, fns. omitted [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038] (hereinafter *Livermore*).)

■ The right of referendum reserved to the electorate of a county is coextensive with the right of referendum reserved to the people of the state (*Geiger v. Board of Supervisors* (1957) 48 Cal.2d 832, 837 [313 P.2d 545]).

■ Legislation authorized by article II, section 11, of the California Constitution to facilitate the exercise of the referendum may not limit or restrict the referendum. The Board's contention that the constitutional revision of 1966[4] deleting certain clauses of the Constitution barring the Legislature from restricting the reserved power of the referendum means that the Legislature is no longer so barred, lacks merit. The 1966 constitutional revision was intended solely to shorten and simplify the Constitution and did not enact any substantive change in the power of the people. (*Livermore, supra*, at p. 595, fn. 12.)

Relying on *County of Madera v. Superior Court* (1974) 39 Cal.App.3d 665, 669-670 [114 Cal.Rptr. 283], the Board argues that the language in California Constitution article II, section 11, "under procedures that the Legislature shall provide" should be construed to authorize the Legislature to enact legislation which in effect may provide for a restriction on the reserve power of the referendum. We disagree. The word "procedures" in article II refers to the details facilitating exercise of the referendum and not to the scope of the referendum. Legislative power to adopt procedural regulations does not include the power to enact substantive measures which would extend, restrict or reduce the scope of a referendum (see *Geiger v. Board of Supervisors, supra*, at p. 837).

---

[4]The deleted clauses were previously found in article IV, section 1, which was repealed in 1966 and replaced by article IV, section 25, which in turn was renumbered in 1976 as article II, section 11.

■ Change in supervisorial district boundaries is a legislative function and thus subject to the referendum (see 36 Ops.Cal.Atty.Gen. 236, 237 (1960); 17 Ops.Cal.Atty.Gen. 133, 134-135 (1951) discussing many of the California cases on the nature of legislative matter and the referendum; see also *Dwyer v. City Council* (1927) 200 Cal. 505, 511 [253 P. 932], and *Hopping v. Council of City of Richmond* (1915) 170 Cal. 605, 611-618 [150 P. 977]).

In 42 Ops.Cal.Atty.Gen. 137 (1963) the Attorney General reasoned that a redistricting ordinance may not go into effect immediately pursuant to the provisions of then Elections Code section 3751[5] and Government Code section 25123. Respondents contend that the reasoning and viability of the Attorney General's opinion is subject to serious challenge because of constitutional changes. We disagree. As previously indicated the constitutional amendments did not make substantive changes. We conclude that such opinion remains basically sound and that Government Code section 25123 does not authorize a redistricting ordinance to go into effect immediately. A law "calling an election" is one of the exceptions to the referendum power under California Constitution article II, section 9, subdivision (a). A redistricting ordinance does not call an election. Nowhere do the constitutional provisions on the referendum use the term "relating to an election" as is found in Government Code section 25123. If "relating to an election" were construed to include a redistricting ordinance, it would result in a restriction of the referendum power reserved to the people. A statute should be construed to eliminate doubts as to its constitutionality (*In re Kay* (1970) 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142]). In addition, as previously indicated we must broadly construe the referendum power to favor the people (*Livermore, supra*, 18 Cal.3d at p. 596; see also Comment, *Judicial Review of Exceptions from the Referendum* (1922) 10 Cal.L.Rev. 371, 383). Consequently, we interpret the "relating to an election" language in Government Code section 25123, subdivision (a), to be limited to those acts which technically relate to the actual conduct of an election or which pertain to ministerial duties in connection with an election such as prescribing voting precincts or setting hours for voting.

---

[5]Elections Code section 3751 then, as now, deals with the effective date of ordinances and is part of a statutory article entitled "Referendum." The exceptions set out in California Constitution article II, section 9, subdivision (a), are not reachable by referendum because they take effect immediately (see The Law of Politics (Cont.Ed. Bar 1977) § 5.78, p. 360; see also Cal. Const., art. IV, § 8, subd. (c)).

The enumeration in Government Code section 25123 of ordinances which may become effective immediately are the same as the exceptions set forth in article II, section 9, subdivision (a), dealing with the referendum. Only legislation which is effective immediately is not subject to referendum. The Legislature cannot reduce the referendary power reserved to the people by enlarging or increasing the type of legislation which becomes effective immediately.

The Board argues that Elections Code section 35003[6] specifically authorizes the challenged ordinance. That section may refer to an authority to enact an ordinance but it does not refer to the effective date of any such ordinance. Elections Code section 35003 simply does not specifically require that an ordinance pursuant to its authority take immediate effect within the meaning of Government Code section 25123, subdivision (b). Although the Board referred in the ordinance to subdivision (b) of Government Code section 25123, our attention has not been called to any law of this state requiring a redistricting ordinance to take immediate effect.

The argument of the Board that petitioners never instituted a petition for referendum within a 30-day period of the enactment of the ordinance misses the mark. The question is whether or not the ordinance was subject to referendum. If it were, as we so conclude, then it could not become effective until too late to apply to the June 3, 1980, election.

■ Nor is Elections Code section 35004[7] cited by the Board significant here. While the Board is correct that Elections Code section 35004 does provide an opportunity to resolve certain matters by commencing an action for declaratory relief within 30 days after the adoption of a

---

[6]Elections Code section 35003 provides: "At any time between the decennial adjustments of district boundaries, the board may cause a census of the county to be taken as provided in Section 26203 of the Government Code, and may adjust the boundaries of the supervisorial districts on the basis of that census, or on the basis of population estimates prepared by the State Department of Finance or the county planning department or planning commission, pursuant to Section 35000."

[7]Elections Code section 35004 provides: "Any person claiming that the estimates of population used in the redistricting pursuant to Section 35003 do not reflect the current population within the district boundaries more accurately than the most recent census data, may commence an action in the superior court in declaratory relief to determine that fact. Such an action shall be brought within 30 days after the adoption of the redistricting ordinance."

redistricting ordinance, it only applies to disputes regarding population estimates. Elections Code section 35004 does not (nor could it, in the face of the reserved power of the referendum) preclude other remedies. Nor does it by its language make a redistricting ordinance effective immediately.

■ Unless the redistricting ordinance were legally effective upon its adoption (which we have concluded was not the case), it could not apply to the June 3, 1980, election. The Board's contention that the petitioners are barred by laches also fails to pass muster. Even if the particular petitioners were barred, such a conclusion would not make the redistricting ordinance effective immediately.

Because we conclude that the County redistricting ordinance was not effective immediately, the June 3, 1980, election insofar as supervisorial districts are concerned is invalid. Our conclusion is reached somewhat reluctantly because we are well aware of the importance of the electoral process in a democratic society and invalidation of an election may produce additional litigation.[8] However, our decision is compelled by the constitutional and statutory provisions on the referendum which in turn is based on the doctrine that all power of government ultimately resides in the people. Referendum remains a veto by the people,[9] and a means whereby the people can prevent legislation from going into effect. Direct legislation (which includes the referendum) is to be held as once characterized by Theodore Roosevelt as a "big stick behind the door"[10] and, while in practice not as effective as in theory because pressure groups abound in this area as elsewhere in the political process, it still remains a means of implementation of the spirit of democracy.

As the court said in *Citizens Against a New Jail* v. *Board of Supervisors* (1976) 63 Cal.App.3d 559, 563 [134 Cal.Rptr. 36]: "Under our system, government is by the people. Through the initiative and referendum provisions of our Constitution and statutes, the people of California have reserved to themselves the ultimate legislative power.

---

[8]Particular remedies which may be available to alleviate and lead to the solution of any problems arising from invalidation cannot properly be discussed by us at this time. Those issues were not briefed or fully argued and we leave such issues to a more appropriate time.

[9]See, e.g., Government Code section 61451, which provides in part: "Ordinances may be disapproved and thereby *vetoed* by voters by..." (Italics added.)

[10]Quoted by Key & Crouch, The Initiative and the Referendum in California (1939) page 504.

Neither an elected board nor a court has the power to limit that reserved right."

Under the circumstances we need not, and should not, consider the other issues raised by petitioners[11] regarding the constitutionality of the redistricting ordinance except to note in passing that such issues also involve extensive factfinding and should initially be decided in any given case by a superior court rather than by an appellate court.

The petition herein prayed for certain relief directed to the County Clerk of Madera County regarding the June 3, 1980, election. Insofar as the petition seeks that relief which is now impossible (the June 3, 1980, election having been held), it is dismissed as moot. As to the other matters prayed for which we deem unnecessary and inappropriate for us to grant at this time, the petition is denied.

Petitioners will recover costs herein.

Hanson (P. D.), J., and Fredman, J.,* concurred.

A petition for a rehearing was denied July 30, 1980, and the opinion was modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied August 27, 1980.

---

[11]Petitioners also sought a writ of mandate commanding compliance by the Board with the provisions of the equal protection clauses of the California and federal Constitutions and Elections Code section 35000. In light of our conclusion we need not reach such issues at this time and we need not assume that those issues will recur and if they do that the facts upon which such issues may be based will remain the same.

*Assigned by the Chairperson of the Judicial Council.