[No. AO18511. First Dist., Div. Five. Dec. 21, 1983.]

Estate of FLOYD E. MARTIN, Deceased.
KENNETH CORY, as State Controller, et al.,
Petitioners and Respondents, v.
SECURITY PACIFIC NATIONAL BANK, as Executor, etc.,
Objector and Appellant.

**COUNSEL**

Lloyd R. Crenna for Objector and Appellant.

Myron Siedorf, John D. Schell and Robert E. Sanderson for Petitioners and Respondents.

**OPINION**

**HANING, J.**—Floyd Martin died testate on December 2, 1980, leaving his estate to his wife, children and several other parties. The report of the inheritance tax referee listed the taxable estate at $805,598 and the amount of inheritance tax due as $58,516, of which $32,946 was due from Martin's surviving spouse.

Appellant, Security Pacific National Bank, executor of Martin's estate, objected to the taxes due from the surviving spouse and from each other beneficiary on the ground that as a result of the enactment of Assembly Bill No. 2092 (A.B. 2092) (Stats. 1980, ch. 634, §§ 1-46, pp. 1737-1760),[1] no tax was due from the surviving spouse and larger exemptions should be applied to decedent's other legatees. The superior court overruled the objections to the tax referee's report. We affirm.

■ Appellant argues that article IV, section 8, subdivision (c) of the California Constitution requires that tax levy statutes operate immediately upon their enactment. That section reads: "(1) Except as provided in paragraph (2) of this subdivision, a statute enacted at a regular session shall go into effect on January 1 next following a 90-day period from the date of enactment of the statute and a statute enacted at a special session shall go into effect on the 91st day after adjournment of the special session at which the bill was passed. [¶] (2) Statutes calling elections, *statutes providing for tax levies* or appropriations for the usual current expenses of the State, and urgency statutes *shall go into effect immediately upon their enactment.*" (Italics added.)

Appellant misinterprets the requirement set out in section 8, subdivision (c)(2). The section simply requires that tax levy statutes "go into effect" immediately upon enactment; it does not require that such statutes become operative immediately upon enactment. ■ *People* v. *Henderson* (1980) 107 Cal.App.3d 475 [166 Cal.Rptr. 20] explains the distinction between "effective date" and "operative date": "An enactment is a law on its effective date only in the sense that it cannot be changed except by legislative process; the rights of individuals under its provisions are not substantially

---

[1]Codified in part at former Revenue and Taxation Code sections 13802-13805, repealed 1982.

affected until the provision operates as law." (*Id.,* at p. 488.) Usually the effective and operative dates of a statute are one and the same, but the courts have recognized the power of the Legislature to establish an operative date later than the effective date, even when the statute is a tax levy falling under article IV, section 8, subdivision (c) of the California Constitution. (*Estate of Nicoletti* (1982) 129 Cal.App.3d 475, 479 [181 Cal.Rptr. 137].)

■ The tax levy statute at hand, A.B. 2092, is constitutionally sound in that it was "effective" immediately upon enactment. Section 46 of A.B. 2092 reads: "This act provides for a tax levy within the meaning of Article IV of the Constitution and shall go into immediate effect. However, the provisions of this act with respect to the computation of inheritance taxes shall apply only to the estates of decedents dying on and after January 1, 1981, and with respect to the computation of gift taxes, shall apply only to gifts made on and after January 1, 1981. All other provisions of this act relating to probate procedure and tax administration and collection, shall apply to all estates, effective January 1, 1981." (Stats. 1980, ch. 634, § 46, p. 1760.) The statute was "effective" upon its enactment on July 19, 1980. By its language, however, it clearly was not "operative" until January 1, 1981. Since Martin died on December 2, 1980, the administration of his estate is not affected by A.B. 2092.

■ As an alternative to its constitutional argument, appellant asserts that the express wording of the tax statute makes it operative as to surviving spouses on July 17, 1980, rather than January 1, 1981.

Inter alia, A.B. 2092 removed interspousal transfers from the inheritance tax. Thus, appellant argues, the second sentence of section 46 of A.B. 2092, *supra,* deferring the application of computation provisions to estates of decedents dying on or after January 1, 1981, does not apply to interspousal transfers since no computation is required under the new law as to such transfers. We do not find this argument persuasive.

We agree with respondents that any provision affecting or changing the inheritance tax scheme is a provision "with respect to the computation of inheritance taxes." (Stats. 1980, ch. 634, § 46, p. 1760.) This is the obvious meaning of the language used; furthermore, to adopt any other view would render the second sentence of section 46 superfluous.

A.B. 2092 has no provisions directly affecting chapter 2 of the California Inheritance Tax Law, the chapter concerned with "Imposition and Computation of Inheritance Tax." (*Estate of Nicoletti, supra,* 129 Cal.App.3d at p. 480.) It does, however, contain "provisions defining transfers not subject to taxation, establishing criteria for valuation and exempting transfers

from taxation." (*Ibid.*) *Estate of Nicoletti* eloquently states the conclusion we must draw: "Such provisions necessarily have an impact on the computation of inheritance taxes . . . . Construction of the pertinent language in section 46 as applying to such substantive provisions is favored, for any other construction would render the language superfluous; such a construction is to be avoided." (*Id.*, at pp. 480-481.) We concur with the reasoning in *Nicoletti, supra,* and *Estate of Rountree* (1983) 141 Cal.App.3d 976 [192 Cal.Rptr. 152], and hold that the statute applies the interspousal exemption only to tax determinations in cases of decedents dying on or after January 1, 1981.

■ For the first time on appeal, appellant argues that the 1982 repeal of the inheritance tax had retroactive effect and should be applied to the case at hand. A short review of the initiatives and legislation constituting the repeal and the judicial treatment of them indicates that appellant's argument must fail.

Propositions 5 and 6, voter initiatives passed at a statewide election on June 8, 1982, had the effect of repealing the inheritance tax. Proposition 5 contained language indicating that the repeal was to be retroactive: "Neither an inheritance tax nor a gift tax shall be imposed on any transfer made and completed on or after January 1, 1981." Proposition 6, however, did not operate retroactively; it stated: "This act shall become operative as of the date of passage hereof . . . ."

The Legislature reenacted and amended the initiatives in Statutes 1982, chapter 1535, part of which is codified in the Revenue and Taxation Code. The code, as amended, sets out the repeal of the inheritance tax with no reference to retroactivity or to operative date of the repeal. (Rev. & Tax. Code, § 13301.) Appellant seizes upon this amended section as evidence of intended retroactivity. But Statutes 1982, chapter 1535, section 17, specifically states that "[i]f the [repeal of the inheritance tax is] declared invalid by an appellate court of this state as applied to estates of persons dying before the effective date of this act, to transfers occurring by reason of a death occurring before that date, or to gifts made or completed before that date, it is the intent of the Legislature that the provisions . . . shall be applicable only to estates of persons dying on or after the effective date of this act . . . ."

Appellant has overlooked the recent case of *Estate of Gibson* (1983) 139 Cal.App.3d 733 [189 Cal.Rptr. 201], in which the retroactive effect of Proposition 5 was explicitly rejected on the basis it was in irreconcilable conflict with Proposition 6, which received the higher affirmative vote. We

concur with the reasoning set out in *Gibson,* and hold that the 1982 initiatives and legislation do not affect the estate of Floyd Martin.

The judgment is affirmed.

Low, P. J., and King, J., concurred.