[No. A031603. First Dist., Div. Three. Apr. 30, 1986.]

WILLIE MAE THOMPSON et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF ALAMEDA COUNTY et al.,
Defendants and Respondents.

**COUNSEL**

Patrick J. Maloney for Plaintiffs and Appellants.

Richard J. Moore, County Counsel, and Douglas Hickling, Assistant County Counsel, for Defendants and Respondents.

## OPINION

**WHITE, P. J.**—Appellants, Willie Mae Thompson et al., appeal from a judgment denying a petition for a writ of mandate by the Superior Court of Alameda County. Appellants sought mandate to compel respondents, Board of Supervisors and Registrar of Voters of Alameda County, to act on their referendum petition. For the reasons below, we affirm.

The facts are not in dispute.

In October 1983, the Board of Supervisors of Alameda County (the Board), enacted ordinance No. 83-77, which reapportioned existing supervisorial voting districts. The June 5, 1984, primary election was held using these newly created districts.

Thereafter, opponents of the redistricting circulated initiative petitions calling for the adoption of an ordinance which would repeal the 1983 redistricting ordinance and revert to the district lines previously established in 1981. The initiative received the requisite number of signatures and was submitted to the Board. (See Elec. Code, § 3701.)[1]

Under section 3711, the Board was required to either adopt the ordinance proposed by the initiative "without change" or submit the measure "without alteration" to the voters at the next election. The Board purported to enact the initiative, ordinance No. 84-79, and reinstated the preexisting 1981 districts. Where the initiative, however, had provided that it would become effective "immediately upon its passage by the voters" (on the Nov. 6, 1984, election), the ordinance as passed by the Board provided that it was to be "effective" 30 days after its adoption, that is, on October 10, 1984, and "operative" on November 7, 1984.

Immediately after the Board's action, appellants began circulating referendum petitions protesting the adoption of ordinance No. 84-79. (§ 3753.) By statute, appellants had until "prior to the effective date of the ordinance" to present to the Board petitions signed by the appropriate number of registered voters. (§ 3753.)

On October 2, 1984, the Registrar of Voters of Alameda County, in response to appellants' inquiry, notified appellants that their referendum petitions could be filed no later than October 10, 1984, the effective date of the ordinance. On October 9, 1984, appellants filed a petition for a writ of mandate and a complaint for declaratory relief against respondents to

---

[1]All references are to the Elections Code unless otherwise indicated.

allow for continued circulation of the petitions until either November 6, 1984, or November 9, 1984 (60 days after the adoption of the ordinance as allowed by §§ 3751.7 and 3752 relating respectively to ordinances regarding revenue bonds and supervisorial salaries). The court issued a stipulated order permitting appellants to continue to collect signatures until November 9, 1984. Appellants admit lacking the requisite number of signatures on October 10, 1984, but allege achieving the appropriate amount by November 6, 1984.

On November 26, 1984, appellants filed an amended writ of mandate to compel the Registrar to certify the signatures collected after October 10, 1984, to command the Board to suspend ordinance No. 84-79 and submit it to the voters (§ 3753), and to declare section 3751 unconstitutional as violative of equal protection. The writ was denied on March 8, 1985. Appellants petitioned the Court of Appeal for a writ of mandate on March 22, 1985, which was summarily denied. A timely appeal from the judgment of the trial court followed.

On appeal, appellants raise several issues: (1) the Board failed to enact the initiative without change, and was therefore required to submit it to the voters; (2) the Board was precluded from adopting a redistricting ordinance with an effective date before the general election; and (3) the limitation of 30 days time in which to collect referendum petition signatures violated equal protection.

## I

■ Appellants argue that when the Board enacted the proposed ordinance, but changed the effective date to October 10, 1984, from that indicated in the initiative, namely, November 6, 1984,[2] it failed to adopt the ordinance "without change" as required by section 3711. Consequently, the Board was obligated to submit the ordinance to the voters in the November 1984 election. (See *Citizens Against a New Jail* v. *Board of Supervisors* (1976) 63 Cal.App.3d 559, 561 [134 Cal.Rptr. 36].) In brief appellants' argument is that the words "without change" should be interpreted literally.

■ "It is settled that a statute is to be construed in such a way as to render it 'reasonable, fair and harmonious with [its] manifest [legislative] purposes . . . .' [citation], and the literal meaning of its words must give

---

[2] Appellants assume the legality of an ordinance passed by the voters having an immediate effective date. However, section 3716 states that an ordinance adopted by the voters becomes effective 10 days after its passage by the majority of voters. Given a conflict between the effective date as provided by statute and that provided in the ordinance itself, it has been suggested that the statutory date prevails. (19 Ops.Cal.Atty.Gen. 94.)

way to avoid harsh results and mischievous or absurd consequences. [Citations.]" (*County of San Diego* v. *Muniz* (1978) 22 Cal.3d 29, 36 [148 Cal.Rptr. 584, 583 P.2d 109].)

■ The purpose of section 3711 is to preserve the right of legislating by initiative on the county level. (See Cal. Const., art. IV, § 1.) However, unlike the Legislature allowing statewide initiatives to be placed directly on the ballot (§ 3500 et seq.), the state chose to limit county voters to the "indirect initiative." That is, the initiative can go before the voters only if it is first presented to but not enacted by the county legislative body. (§ 3711.) The intent of the Legislature in granting solely indirect initiative power to voters at the county level was to create the opportunity to spare the expense of a public vote. (See Note, *The Scope of the Initiative and Referendum in California* (1966) 54 Cal.L.Rev. 1717, 1721.)[3]

■ It would be a practical impossibility to draft an initiative ordinance that could serve alternatively as an ordinance to be adopted by the people or by the board of supervisors; the variances in statutory requirement make this so.[4] When the Board enacted ordinance No. 84-79, it made no changes in the substantive law; the newly formulated districts were repealed as called for by the initiative petition. The change in the effective date was, however, mandated by section 3751, which requires, with certain exceptions, all ordinances to become effective 30 days from the date of final passage. (See also Gov. Code, § 25123.) The Board's actions do no violence to the language of section 3711. The ordinance has been properly enacted by the Board and is not subject to voter approval.

II

■ Appellants' second contention is that the Board is prohibited by section 35006 from enacting a redistricting ordinance with an effective date before the general election. Section 35006 provides in part that a change in the boundaries of a supervisorial district cannot be made between the direct primary election and the general election. Appellants argue that the Board should have waited until October 7, 1984, to enact the ordinance in order to be in compliance with section 35006.

---

[3] The author's comments are specifically directed toward the indirect referendum. (§§ 3753-3754.) However, we believe they are equally applicable to the indirect initiative. (See *Ortiz* v. *Board of Supervisors* (1980) 107 Cal.App.3d 866, 870, fn. 3 [166 Cal.Rptr. 100].)

[4] For example, the enacting clause for an ordinance submitted to the voters of a county must read "The people of the County of _____ do ordain as follows[]" (§ 3718); whereas the enacting clause of all ordinances passed by a board of supervisors must state, "The Board of Supervisors of the County of _____ do ordain as follows." (Gov. Code, § 25120.)

■■ ■■ ■■ Appellants appear to misunderstand the difference between the ordinance's "effective date" of October 10, 1984, and its "operative date" of November 7, 1984.[5] ■■ "An enactment is a law on its effective date only in the sense that it cannot be changed except by legislative process; the rights of individuals under its provisions *are not substantially affected until the provision operates as law.*" (*People* v. *Henderson* (1980) 107 Cal.App.3d 475, 488 [166 Cal.Rptr. 20]; italics added.)

Section 35006 protects candidates whose places of residence have qualified them for candidacy in particular districts from being subsequently disqualified before the election by virtue of redistricting. Voters are thereby assured that candidates whom they support will remain on the ballot.

The rights of both candidates and voters in the 1984 election at issue were adequately protected by the delayed operative date. Neither candidates nor voters were affected by the ordinance's effective date. By definition, the redistricting ordinance affected the rights of both candidates and voters at the time of its operative date; that is, after the November 6, 1984, election. The Board's action in delaying the operative date leaves candidates and voters in the same position they would be in had the Board initially enacted the ordinance on October 7, 1984, as appellants urge. Thus, we perceive no violation of the requirements of section 35006 in passing a redistricting ordinance with an effective date between the primary and general election, but with an operative date after the general election.

### III

■■ Appellants finally contend that section 3751 violates their equal rights to the use of the referendum. Appellants' argument is as follows: Section 3753 permits petitions protesting the adoption of an ordinance to be presented to the board of supervisors prior to the effective date of the ordinance being protested. Because the redistricting ordinance in question became effective in 30 days (§ 3751), appellants had up to the end of the 30 day period in which to file a valid petition. However, ordinances which authorize the issuance of revenue bonds or change supervisors' salaries become effective in 60 days. (§§ 3751.7, 3752.) Thus, citizens who wish to protest that type of ordinance have up to the end of the 60-day period in which to file petitions. Appellants aver that conditioning the right of referendum on the nature of the ordinance for which repeal is sought is suspect.

---

[5]It is clear that the Legislature may provide that a statute have an operative date later than its effective date. (*Estate of Martin* (1983) 150 Cal.App.3d 1, 4 [197 Cal.Rptr. 261].) Because the rules of construction of statutes apply to the construction of ordinances (*Evola* v. *Wendt Construction Co.* (1959) 170 Cal.App.2d 21, 24 [338 P.2d 498]), we conclude that a county ordinance may also provide for different effective and operative dates.

Equal protection of the law is a fundamental tenet of both federal and state constitutions. (U.S. Const., Amend. XIV; Cal. Const., art. I, § 7.) ■ At a minimum, equal protection requires that persons similarly situated receive like treatment. (*Brown* v. *Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212] citing *Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645].)

■ Any analysis of an equal protection claim begins with determining the correct standard of review to be used by the court. (*Fullerton Joint Union High School Dist.* v. *State Bd. of Education* (1982) 32 Cal.3d 779, 798 [187 Cal.Rptr. 398, 654 P.2d 168]; *Rittenband* v. *Cory* (1984) 159 Cal.App.3d 410, 417 [205 Cal.Rptr. 576].) Prior cases have eloquently described the tests for equal protection analysis mandated by the United States and California Supreme Courts. (See, e.g., *Plyler* v. *Doe* (1982) 457 U.S. 202, 216-218 [72 L.Ed.2d 786, 798-800, 102 S.Ct. 2382]; *Darces* v. *Woods* (1984) 35 Cal.3d 871, 885-886 [201 Cal.Rptr. 807, 679 P.2d 458].) Cases involving suspect classifications or touching on fundamental interests are subject to strict scrutiny requiring a compelling state interest to justify the law. All other cases merely require that "distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose." (*Rittenband* v. *Cory, supra,* at pp. 417-418; *Bay Area Women's Coalition* v. *City and County of San Francisco* (1978) 78 Cal.App.3d 961, 965-966 [144 Cal.Rptr. 591].)[6]

■ We agree with appellants that the right of referendum is "precious" and should not be "improperly annulled" by the court. (*Ortiz* v. *Board of Supervisors, supra,* 107 Cal.App.3d 866, 870-871.) However, even were we to conclude that the right of referendum is fundamental, strict scrutiny is unwarranted. Countless election provisions detailing the mechanisms of the election process may have such minimal impact on fundamental rights that they can properly be judged under the "rational basis" equal protection standard. (*Gould* v. *Grubb* (1975) 14 Cal.3d 661, 670 [122 Cal.Rptr. 377, 536 P.2d 1337]; see also *Anderson* v. *Celebrezze* (1983) 460 U.S. 780, 788 [75 L.Ed.2d 547, 557, 103 S.Ct. 1564]; *Fair Political Practices Com.* v. *Superior Court* (1979) 25 Cal.3d 33, 47 [157 Cal.Rptr. 855, 599 P.2d 46].)

Statutes limiting the time for filing referendum petition signatures are an administrative necessity designed to prevent the "placing in limbo a final

---

[6]The United States Supreme Court recognizes an intermediate standard of scrutiny requiring that the classification further a substantial state interest. (See, e.g., *Plyler* v. *Doe, supra,* 457 U.S. at p. 224 [72 L.Ed.2d at p. 803] [discrimination against illegal alien children]; *Craig* v. *Boren* (1976) 429 U.S. 190, 197 [50 L.Ed.2d 397, 406, 97 S.Ct. 451] [gender-based classifications].) California, however, adheres to the two-tier model in reviewing equal protection challenges. (See *Rittenband* v. *Cory, supra,* 159 Cal.App.3d at pp. 423-424, fn. 11.)

legislative act." (*Board of Supervisors* v. *Superior Court* (1983) 147 Cal.App.3d 206, 209 [195 Cal.Rptr. 67].) At most, the time limits mean that petitioners may have to organize and act quickly. However, given that the referendum petition drive is limited to a countywide area, even a 30-day time limit is not unreasonable. Thus, the time limits have no appreciable impact on the exercise of referendum rights, and strict scrutiny is inappropriate. (See *Choudhry* v. *Free* (1976) 17 Cal.3d 660, 664 [131 Cal.Rptr. 654, 552 P.2d 438].)

Using the rational basis standard, we determine if the distinction between allowing 60 days to file referendum petitions for ordinances relating to revenue bonds and supervisorial salaries and allowing only 30 days to file petitions for other ordinances, including redistricting, is related to a legitimate state end. "[A] statute will be set aside on equal protection grounds only if it is based on reasons totally unrelated to the pursuit of that goal. The Legislature is presumed to have acted constitutionally and the statutory classification will be set aside only if no ground can be conceived to justify it." (*Lostritto* v. *Southern Pac. Transportation Co.* (1977) 73 Cal.App.3d 737, 749 [140 Cal.Rptr. 905]; see also *Weber* v. *City Council* (1973) 9 Cal.3d 950, 961 [109 Cal.Rptr. 553, 513 P.2d 601].)

 The statutes at issue regulate the filing of referendum petitions. They establish two distinct classes of ordinances for this purpose. Revenue bond and supervisorial salary ordinances comprise one class; all other types of ordinances form the other class. The Legislature could rationally conclude that the electorate should have more than 30 days in which to consider and reject ordinances affecting their pocketbooks. Moreover, in the case of supervisorial salary ordinances, more time may be justified to check the potential for self-interest inherent in supervisors raising their own salaries. Thus, the statutes are sufficiently related to a legitimate state end so that equal protection requirements are satisfied.

The judgment is affirmed.

Scott, J., and Merrill, J., concurred.