[Civ. No. 13862. First Dist., Div. One. Nov. 5, 1948.]

JAMES R. DOWNING, Appellant, v. THE MUNICIPAL COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent.

J. W. Ehrlich and Victor E. Cappa for Appellant.

Edmund G. Brown, District Attorney, and Norman Elkington, Assistant District Attorney, for Respondent.

WARD, J.—This is an appeal from a judgment ordering that the issuance of a writ of prohibition be denied on the "ground that the petitioner has a plain, speedy and adequate remedy in the ordinary course of law by taking an appeal from any adverse judgment" that may be rendered.

The petition for the writ of prohibition sets forth that 10 separate statutory complaints were filed in the Municipal Court of the City and County of San Francisco charging the commission of misdemeanors—violations of section 640a of the Penal Code—in that defendant knowing and having cause to believe that a certain act was intended for unlawful use did sell and give away a device and substance by placing said device and substance in the United States mail, postage prepaid, addressed (in the present case) to the C. & H. Cleaners, 1802 Polk Street, San Francisco, California. It is then alleged that the device and substance were "intended and calculated to be placed or deposited in a receptacle, depository and contrivance; to-wit; a parking meter, designed to receive lawful coin of the United States of America in connection with the sale, use or enjoyment of property or service, with the intent to defraud the City and County of San Francisco, the licensee, lessee and owner thereof." The remaining complaints are the same in form and substance except in the allegation naming the recipients of the devices.

After arrest, a motion to quash the complaint and a demurrer were filed. The motion was denied and the demurrer overruled. The defendant entered a plea of not guilty and the case was set for trial. Upon a petition alleging that the municipal court did not have jurisdiction to try petitioner on the 10 or any of the stated misdemeanor complaints the superior court issued an alternative writ of prohibition. The superior court ruled as heretofore indicated and the accused petitioner in that action filed this appeal.

Petitioner contends: "(a) The complaints are void because they do not set forth facts which constitute public offenses

under Section 640a of the Penal Code as parking meters are not used in connection with the 'sale, use or enjoyment of property or service' since the City under the Van Ness Ordinance of 1855 holds title to Polk Street as a trustee for the public and in regulating traffic thereon by means of the parking meters is performing a governmental function and not a proprietary one. (b) The petitioner and appellant has no plain, speedy and adequate remedy in the ordinary course of law by taking an appeal from any adverse judgment and the peremptory writ should be issued.''

Section 640a, Penal Code, provides in part: ''Any person who shall knowingly and willfully operate, or cause to be operated, or who shall attempt to operate, or attempt to cause to be operated, any automatic vending machine, slot machine, coin-box telephone or other receptacle designed to receive lawful coin of the United States of America in connection with the sale, use or enjoyment of property or service, by means of a slug or any false, counterfeited . . . coin, or by any means, method, trick or device whatsoever not lawfully authorized by the owner, lessee or licensee of such machine, coin-box telephone or receptacle, or who shall take, obtain or receive from or in connection with any automatic vending machine, slot machine, coin-box telephone or other receptacle designed to receive lawful coin of the United States of America in connection with the sale, use or enjoyment of property or service . . . the use or enjoyment . . . or service . . . without depositing in and surrendering to such machine, coin-box telephone or receptacle lawful coin of the United States of America to the amount required therefor by the owner, lessee or licensee of such machine, . . . shall be guilty of a misdemeanor.

''2. Any person who, with intent to cheat or defraud the owner, lessee, licensee or other person entitled to the contents of any automatic vending machine, slot machine, coin-box telephone or other receptacle, depository or contrivance designed to receive lawful coin of the United States of America in connection with the sale, use or enjoyment of property or service, or who, knowing or having cause to believe that the same is intended for unlawful use, shall manufacture for sale, or sell or give away any slug, device or substance whatsoever intended or calculated to be placed or deposited in any such automatic vending machine, slot machine, coin-box telephone or other such receptacle, depository or contrivance, shall be guilty of a misdemeanor.''

A slug or token is defined in Penal Code, section 648a as "of a size and shape such that the radius, the diameter and the thickness thereof are each within six one-hundredths of an inch of that of any coin of the United States of America . . . The term 'slug' and the term 'token,' as used herein, mean any piece of metal or other material not a coin of the United States or a foreign country." Subdivision 1 of section 640a of the Penal Code throws some light on the definition and construction to be placed on similar words and terms in subdivision 2 of the same section.

■ It appears from the briefs that parking meters had not been invented, or at least used, at the time of the passage of section 640a. However, this fact is not determinative of the question whether the complaints state a violation of the section. The fact that a new machine used for governmental purposes has been invented, and a new means, method or scheme devised to evade a lawful condition for its use does not destroy the effect of the statute if the provisions of the statute are otherwise lawful.

Petitioner first considers whether a parking meter is an "automatic vending machine" in the sense that it does not sell touchable, material property. There is no allegation in the complaint that the "parking meter" is a vending machine intended to produce tangible property upon the insertion or deposit of a device or substance. It is true that the code section and the complaint used the word "sale," but the "use or enjoyment of property or service" is the object to be obtained by the deposit of a "lawful coin" in a receptacle similar to a telephone coin receptacle upon which the property privilege of service is automatically bestowed to converse with another person. The price of the service is the deposit or payment of a coin.

■ Many of the cases cited by appellant are based upon the common law rule that penal statutes must be construed strictly. That rule does not have application in this state. ■ It is true that when an accused is charged with an offense defined in terms subject to two reasonable constructions the construction favorable to the defendant is ordinarily adopted (*People* v. *Valentine,* 28 Cal.2d 121 [169 P.2d 1]), but this method of construction does not mean that the language of a statute must be stretched and strained beyond the limitation of reason. "The rule of the common law, that penal statutes are to be strictly construed, has no application to this code. All its provisions are to be construed according

to the fair import of their terms, with a view to effect its objects and to promote justice." (Pen. Code, § 4.)

Appellant fails to distinguish between the vending slot machine which produces tangible property, and the slot machine which gives the use and enjoyment of service which is "property" as used in section 640a. Consideration of the definition of property, as applied to parking meters, was given by Judge Eustace Cullinan, Jr., to whom the motion to quash and the demurrer were submitted. A memorandum opinion was filed covering the definition of property which we adopt in part as the opinion of this court: "The Court finds that the right to park on a public street is a 'property' and that therefore Section 640a, Subdivision 2, applies to parking meters and so inhibits the conduct described in the complaint. One who deposits a coin in a parking meter has a paramount right to park in the adjacent parking space as against any other user of that public street, even though his right be so tenuous that he may lose it upon yielding the possession before the expiration of the allotted time.

"The word 'property' has been subjected to innumerable and various definitions. Courts have said that the word 'property' is 'all-embracing so as to include every intangible benefit and prerogative susceptible of possession or disposition.' (*Button* v. *Hikes*, 296 Ky. 163 [176 S.W.2d 112, 150 A.L.R. 779]. See also *Great Northern Railway Co.* v. *Washington Electric Co.*, 197 Wash. 627 [86 P.2d 208]; *Liddick* v. *Council Bluffs*, 232 Iowa 197 [5 N.W.2d 361]; *Investment & Securities Co.* v. *Robbins*, 49 F.Supp. 620).

"Even a free game which a person might win on a pin ball machine has been judicially invested with the dignity of 'property' (*Middlemas* v. *Strutz*, 71 North Dakota 186 [299 N.W. 589]). As the court said in *Franklin* v. *Franklin*, 67 Cal.App.2d 717 [155 P.2d 637], the construction of the word 'property' depends on the context with which it is used and signifies 'any valuable right or interest protected by law.' See also *Angelopulos* v. *Bottorff*, 76 Cal.App. 621 [245 P. 447]; *Cavassa* v. *Off*, 206 Cal. 307 [274 P. 523]; *Hunt* v. *Authier*, 28 Cal.2d 288 [169 P.2d 913, 171 A.L.R. 1379]."

Appellant takes the position that a motorist already has the right to park on the street, and the municipality cannot take that right away from him. It is claimed that the city of San Francisco does not have any property rights in its streets —particularly that part of Polk Street whereon the offense is alleged to have occurred. The alleged counterfeit device or

substance was alleged to have been sent to a business address in the 1800 block on Polk Street. There is no contention that the counterfeit substance was to be used on Polk Street as parking meters are installed in other parts of San Francisco. However, the Polk Street area, near the business of the C. & H. Cleaners, is a portion of public lands relinquished to San Francisco by an act of Congress of July 1, 1864, and by a decree of the Circuit Court of the United States. The rights of parties to certain portions of the land are derived under the often referred to ordinance (The Van Ness Ordinance). "By section 4 of said ordinance the city, however, as a consideration for said grant, 'reserves to itself . . . such lots and lands as may be selected and reserved for streets and other public purposes.' " (*Board of Education* v. *Martin*, 92 Cal. 209, 211 [28 P. 799].) In the same case the court said (p. 216) : "The proprietary interest in all such property belongs to the public, and whether the legal title to such property be in the municipality or any of its officers or departments, it is at all times held by it or them for the benefit of the whole public, and without any real proprietary interest therein."

    Assuming that the power of the city to exact fees for the privilege of parking is conferred by article XI, section 11 of the state Constitution, and that the city ordinance (designated as Bill No. 4425, series of 1939) provides for meter zones and that the fees are for use as police regulation of traffic, there is nothing inconsistent with the conclusion that such regulation is for the "benefit of the whole public." (*Board of Education* v. *Martin, supra.*) It must be admitted that the use of the meters is to make the area alongside the curb available to as many persons as possible. The public has the right to the use of the property, and hence, without the necessity of selling or renting its duly constituted authority has the right to control the use of such area.

The case of *DeAryan* v. *City of San Diego,* 75 Cal.App.2d 292 [170 P.2d 482], is stressed by petitioner. In that action for injunctive relief, the complaint alleged that several thousands of dollars were being collected from meters beyond the amount needed to meet expenditures provided in the ordinance, and that the meters were so constructed that they failed to deliver the parking time indicated by the schedules, "with the result that there is an unlawful exaction of contributions for parking services which are not delivered. The prayer is for an order . . . prohibiting the city from using 'parking meters which are not mechanically constructed to deliver the parking time as

announced and advertised.' '' (P. 293.) The gist of the opinion is that the evidence supported findings that no money had been unlawfully exacted from any person by reason of the installation and use of meters. In the DeAryan case, it was said (p. 296) : ''It has been held that such regulation of parking and control of traffic may well justify a fee system intended and calculated to hasten the departure of parked vehicles in congested areas, as well as to defray the cost of installation and supervision. (*In re Opinion of the Justices,* 297 Mass. 559 [8 N.E.2d 179] ; *Bowers* v. *City of Muskegon,* 305 Mich. 676 [9 N.W.2d 889].)''

██ The contention that appellant has no plain, speedy and adequate remedy needs little consideration. The Supreme Court has broadened the grounds for the issuance of the writ of prohibition. (*Greenberg* v. *Superior Court,* 19 Cal.2d 319 [121 P.2d 713] ; *Rescue Army* v. *Municipal Court,* 28 Cal.2d 460 [171 P.2d 8].) However, the question of whether there is a plain, speedy and adequate remedy is ordinarily a question of fact. (21 Cal.Jur. p. 585.)

██ It is sufficient to say that the superior court, having reached a conclusion that the municipal court had jurisdiction of the accused and the cause set forth in the complaint, was justified in denying the writ upon the ground that petitioner has a plain, speedy and adequate remedy in the ordinary course of the law by taking an appeal from any adverse judgment.

The judgment and order discharging the alternative writ are affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 30, 1948.