OPINION
 

 By the Court,
 

 Maupin, J.:
 

 In this case, we primarily consider whether intangible property, in particular a contractor’s license, can be the subject of a claim in tort for conversion. In doing so, we adopt the California definition of “property rights” and the Restatement (Second) of Torts rule defining conversion of “intangible personal property,” and expressly reject the notion that personal property must be tangible in order to give rise to a conversion claim. We therefore conclude in this case that the mere fact that one’s use of a contractor’s license does not physically prevent others from using the same license does not preclude a plaintiff in a conversion action concerning alleged unauthorized use of the license from presenting the claim for determination by a trial jury. Instead, we hold that the exercise of a right that belongs to another may constitute an act inconsistent with the titleholder’s rights and may therefore satisfy the ‘ ‘wrongful dominion” element of conversion. Accordingly, we conclude that the use of a corporate contractor’s license by an individual for independent projects, without the permission of the entity named in the license, may constitute a conversion when the license is the exclusive property of the individual or entity to which it is issued.
 

 FACTS
 

 In 1995, Lance Walter, Allen Stern, Toni Stern, Paul Kenner, and David Allsop formed Walter Homes, Ltd., a limited liability
 
 *905
 
 company, to engage in the business of residential real estate development. Allsop owned 12.5 percent of the company, and the remaining owners collectively held 87.5 percent of the issued corporate shares. During the year 1998, Allsop engaged in two separate interactions with John H. Midby and M.C. Multi-Family Development, L.L.C., Midby’s real property development company. One interaction involved Multi-Family Development’s acquisition of all Walter Homes’ corporate stock except for the 12.5 percent held by Allsop. A second interaction involved a consulting arrangement under which Allsop agreed to assist in the development of a Multi-Family Development project known as Sienna Villas located in the Las Vegas area. As described below, these interactions became the subject of the dispute litigated in this matter.
 

 The licensing dispute
 

 In November 1998, Allsop approached Midby, the managing partner of Multi-Family Development, about buying the 87.5 percent interests in Walter Homes held by Walter, Kenner, and the Sterns. A year later, in November 1999, the parties entered into an express agreement whereby Multi-Family Development acquired the 87.5 percent interest in Walter Homes as well as management rights in the company. Allsop retained his 12.5 percent ownership interest in Walter Homes.
 

 In October 1999, Allsop formed Crestdale Associates, Ltd., for the purpose of developing residential real estate. Although Crest-dale Associates became a competitor with Walter Homes, such business activity was not prohibited under the basic Walter Homes Operating Agreement. However, rather than obtain a separate contractor’s license for Crestdale Associates, Allsop instead used the Walter Homes license to develop Crestdale Associates properties.
 

 In September 2000, Allsop approached Midby with a proposal to purchase, for himself, Multi-Family Development’s interest in Walter Homes. Midby expressed interest and Allsop’s attorney, Douglas Gerrard, drew up a proposed written purchase agreement. The draft included a provision that released Allsop from liability for his prior use of the Walter Homes contractor’s license, which according to Midby, revealed for the first time Allsop’s use of the license in connection with other ventures. Having learned that Allsop had used the Walter Homes license for independent projects, Midby refused to continue negotiations.
 

 The rights of the members of Walter Homes were set forth in paragraph 6.3 of the Walter Homes Operating Agreement:
 

 Nonrestriction of Business Pursuits of Members and Administrative Committee Members.
 
 This Operating Agreement shall not preclude or limit in any respect the right of any Member or Administrative Committee Member to engage in or invest
 
 *906
 
 in any business activity of any nature or description, including those which may be the same or similar to the Company’s business and in direct competition therewith.
 
 Any such activity may be engaged in independently or with other Members or Administrative Committee Members.
 
 No Member shall have the right, by virtue of the Articles of Organization, this Operating Agreement or the relationship created hereby, to any interest in such other ventures or activities, or to the income or proceeds derived therefrom. The pursuit of such ventures, even if competitive with the business of the Company, shall not be deemed wrongful or improper and any Member or Administrative Committee Member shall have the right to participate in or to recommend to others any investment opportunity. (Emphasis added.)
 

 Article 20 of the Agreement further stated that
 

 The Articles of Organization and this Operating Agreement contain the entire understanding between and among the Members and supersede any prior understandings and agreements between and among them respecting the subjects of the Articles of Organization and this Operating Agreement. . . .
 

 Notwithstanding Allsop’s right to develop other projects under paragraph 6.3 of the Operating Agreement, Midby, Multi-Family Development, and Walter Homes filed a complaint in the district court against Allsop and Crestdale Associates seeking damages and various forms of relief, based on their claim that, among other things, Allsop and Crestdale Associates converted the Walter Homes contractor’s license for their own personal benefits.
 

 The consulting dispute
 

 In early 1998, before Multi-Family Development purchased the bulk of the Walter Homes’ corporate shares, Midby and Allsop had discussed the prospect of Allsop consulting with Midby on projects other than those connected with Walter Homes. Although they developed a draft consulting agreement, neither party could agree on terms. Nonetheless, they eventually came to an oral understanding that Midby would pay Allsop $10,000 per month plus a percentage of the profits from the Sienna Villas project for his consulting services. Allsop began consulting for Midby in June 1998, but Midby paid Allsop only for the months of January, February, and March 2000. In July 2000, Allsop terminated the consulting arrangement.
 

 PROCEDURAL HISTORY
 

 Appellants/cross-respondents M.C. Multi-Family Development, LLC, Walter Homes, Ltd., and John H. Midby (collectively
 
 *907
 
 “Multi-Family Development”) filed a complaint against respondents/cross-appellants Crestdale Associates, David Allsop, and Karen Allsop (collectively “Crestdale Associates”). Multi-Family Development later amended the complaint to assert claims for (1) fraud in the inducement to purchase Walter Homes stock, (2) breach of the covenant of good faith and fair dealing, (3) breach of the duty of loyalty, (4) breach of fiduciary duty, (5) conversion, and (6) unjust enrichment. Crestdale Associates filed an answer and counterclaims for breach of the consulting agreement, fraudulent misrepresentation, and unjust enrichment. Multi-Family Development then moved for summary judgment on all claims and counterclaims. The district court denied the motion.
 

 Before trial, Crestdale Associates served an unapportioned offer of judgment under which it agreed to pay Multi-Family Development $5,000 and dismiss all of its counterclaims. Multi-Family Development rejected the offer and, thereafter, rejected a second unapportioned offer in the amount of $50,000. A jury trial on all claims and counterclaims followed.
 

 At trial, Multi-Family Development argued, based on the terms of the Operating Agreement, and conversations between Allsop and Midby, that Allsop had no reason to believe that he was authorized to use Walter Homes’ assets, including the contractor’s license, to compete with Walter Homes. Multi-Family Development further claimed that the members of Walter Homes, including Allsop, agreed to be bound by the provisions in the Operating Agreement. Crestdale Associates, on the other hand, maintained that the Walter Homes Operating Agreement permitted its members to compete against one another. In this, the district court allowed it to present parol evidence regarding the meaning of the Operating Agreement, including testimony that members of Walter Homes had, in the past, used the contractor’s license on a number of independent projects, pursuant to Paragraph 6.3.
 

 Concerning Crestdale Associates’ counterclaim for breach of the consulting agreement, Multi-Family Development attempted to admit an unexecuted, written draft of the consulting agreement that Midby and Allsop attempted to negotiate. Multi-Family Development offered the draft as evidence of what Midby and Allsop intended when they entered into the oral agreement. Although the district court sustained Crestdale Associates’ objection to the admission of the document, it permitted Multi-Family Development to question Allsop regarding the preliminary negotiations leading to the oral arrangement with Midby.
 

 After Multi-Family Development concluded its case-in-chief in the licensing dispute, Crestdale Associates moved for a directed verdict on Multi-Family Development’s claims for fraud in the inducement, breach of the covenant of good faith and fair dealing, and conversion. The trial court granted the motion for directed ver
 
 *908
 
 diet on the fraud in the inducement and conversion claims. As to the conversion claim, the following exchange took place between the district court judge and counsel for Multi-Family Development:
 

 THE COURT: All right . . . The motion on the fifth cause of action on conversion, there’s no evidence of the taking. There might be evidence of use, but not the taking of a license which is completely separate from a conversion claim.
 

 MR. ESCHWEILER: Your honor, the conversion claim rests upon the wrongful dominion of the license. And that’s what we have to prove. And the evidence provided by Mr. Midby shows that there is a wrongful dominion by the Defendants to get us by a Rule 50(b) motion.
 

 THE COURT: I disagree. It’s granted as to the fifth cause of action. . . .
 

 As to the remaining Multi-Family Development claims, the jury found for Crestdale Associates. As to the counterclaims, the jury found in favor of Crestdale Associates on the claims for breach of oral contract and unjust enrichment, and awarded $678,500 in damages.
 

 The district court subsequently denied Crestdale Associates’ motion for attorney fees brought under NRCP 68 and NRS 17.115, Nevada’s “offer of judgment” rule and statute, finding that Crest-dale Associates’ offer of judgment was not properly apportioned among the plaintiffs.
 
 [1]
 
 The district court also refused Crestdale Associates’ application for prejudgment interest brought under NRS 99.040(l)(a), which provides that, in contract actions, interest must be awarded upon all monies owed from the time an obligation becomes due.
 

 Multi-Family Development filed this timely appeal from the district court’s directed verdict on the conversion claim, assigning error to several evidentiary rulings and arguing that a new trial on that claim is warranted. Crestdale Associates cross-appeals the portion of the order denying it attorney fees and prejudgment interest.
 
 [2]
 

 
 *909
 

 DISCUSSION
 

 Multi-Family Development asserts that Crestdale Associates engaged in wrongful, unauthorized use of the Walter Homes contractor’s license and, accordingly, is liable for conversion. On appeal, as it did in the district court, MultiFamily Development claims that intangible property, such as a license, can be converted under Nevada law. Multi-Family Development further argues that Crestdale Associates exercised “wrongful dominion” over the license. In this, MultiFamily Development asserts that, based on NRS 624.260
 
 [3]
 
 and NRS 624.305,
 
 [4]
 
 Allsop, even as a qualified employee and share
 
 *910
 
 holder of Walter Homes, had no ownership or possessory interest in the corporate contractor’s license and that such a license can only be used by the individual or entity to which it is issued. Multi-Family Development further argues that Allsop, although “a qualified employee” of Walter Homes, was not given permission by Midby, as Walter Homes’ other shareholder, or under the Walter Homes Operating Agreement to use the license, which was in the company’s name and not in Allsop’s name, for his use in independent projects.
 

 Crestdale Associates conceded at the oral argument of this appeal that a contractor’s license constitutes personal property that can be converted. Nevertheless, it argues that the district court properly directed a verdict on the conversion claim because MultiFamily Development failed to establish that Allsop lacked authority to use the Walter Homes license or that he used the license to the exclusion of Walter Homes. Thus, Crestdale Associates contends it did not exercise “wrongful dominion” over the license. In this, Crestdale Associates asserts that the owners of Walter Homes had established a practice of using the license for their independent projects and that the Operating Agreement did not expressly prohibit the use of the license for non-Walter Homes projects.
 

 Conversion
 

 A directed verdict is proper pursuant to NRCP 50 when “the evidence is so overwhelming for one party that any other verdict would be contrary to the law.”
 
 [5]
 
 In determining the merits of a motion for directed verdict, “the trial court must view the evidence and all inferences most favorably to the party against whom the motion is made.”
 
 [6]
 
 We apply the same standard as the trial court on appeal.
 
 [7]
 

 In
 
 Evans v. Dean Witter Reynolds, Inc.
 
 ,
 
 [8]
 
 we defined conversion as ‘“a distinct act of dominion wrongfully exerted over another’s personal property in denial of, or inconsistent with his title or rights therein
 
 or
 
 in derogation, exclusion, or defiance of such title or rights.’ ”
 
 [9]
 
 Additionally, “conversion is an act of general intent, which does not require wrongful intent and is not excused by care,
 
 *911
 
 good faith, or lack of knowledge.”
 
 [10]
 
 “Whether a conversion has occurred is ... a question of fact for the jury.”
 
 [11]
 

 Despite Crestdale Associates’ concession that a contractor’s license is personal property that can be converted, we nonetheless begin by clarifying if and when intangible property can be converted under Nevada law. In so doing, we note a trend toward recognizing intangible property as personal property that can be converted and expressly reject the rigid limitation that personal property must be tangible in order to be the subject of a conversion claim.
 
 [12]
 

 By way of example, in
 
 Kremen v. Cohen,
 

 [13]
 

 the United States Court of Appeals for the Ninth Circuit, applying California law in a diversity action, set forth a three-part test for determining whether a property right exists. According to that court, a property right exists when (1) there is an interest capable of precise definition, (2) the interest is capable of exclusive possession or control, and (3) the putative owner has established a legitimate claim to exclusivity.
 
 [14]
 
 Applying this test, the court in
 
 Kremen
 
 explained that property is a broad concept encompassing ‘ ‘ ‘every intangible benefit and prerogative susceptible of possession or disposition.’ ”
 
 [15]
 
 Under
 
 Kremen,
 
 such rights included the right to use of an Internet website domain name.
 
 [16]
 
 Because we conclude that the Ninth Circuit’s formulation for determining whether a property right exists is consistent with
 
 Evans,
 
 we now apply to the intangible property at issue here — the contractor’s license issued to Walter Homes.
 

 In assessing whether a contractor’s license is personal property, we first consider whether a contractor’s license provides a property interest capable of precise definition. Because such a license provides the right to engage in certain, approved instances of construction and development, we conclude that it satisfies the first element of a property right. Second, because NRS 624.305 allows only the individual or entity named on the license to legally use it, and because the license is capable of Walter Homes’ exclusive con
 
 *912
 
 trol, the
 
 Kremen
 
 test’s second element is also satisfied.
 
 [17]
 
 Third, given the obligation under NRS 624.260(2) that the licensee must individually demonstrate that he or she or a responsible managing person is qualified to obtain a contractor’s license, Walter Homes, the license holder, has a legitimate claim to exclusivity in the use of that property right.
 
 [18]
 

 In addition, the Restatement (Second) of Torts section 242 outlines when intangible personal property can be converted. It states that “[w]here there is conversion of a document in which intangible rights are merged, the damages include the value of such rights.’ ’ Here, the intangible rights afforded by the contractor’s license are merged into the license document — the document itself is representative of the right of the named individual or entity to engage in approved instances of construction and development. Accordingly, we conclude that a contractor’s license is intangible personal property that may be converted under Nevada law.
 

 Crestdale Associates argues that the facts elicited at trial demonstrate that it exercised no ‘ ‘wrongful dominion’ ’ over the license as a matter of law. We disagree. While the unauthorized use of a contractor’s license does not involve an actual physical appropriation or “taking” as the district court concluded, it nonetheless may constitute an act inconsistent with the rights of the titleholder under
 
 Evans.
 

 Here, Multi-Family Development provided sufficient evidence to overcome Crestdale Associates’ motion for a directed verdict. Specifically, testimony indicated that Midby did not grant Allsop permission to use the Walter Homes license and that the Operating Agreement, though it allowed Walter Homes’ members to engage in independent projects, did not authorize the use of the Walter Homes contractor’s license on those projects.
 
 [19]
 
 Although there was testimony presented at trial that other Walter Homes’ members used the license on individual projects, that evidence is not so overwhelming that any verdict other than one in favor of Crestdale Associates would be contrary to law.
 
 [20]
 
 Moreover, Multi-Family
 
 *913
 
 Development’s acquisition of 87.5 percent of the Walter Homes entity undermined the probative value of any prior course of conduct concerning the license. In any case, an issue remains concerning whether Crestdale Associates’ use of the license amounted to a distinct act of dominion, wrongfully exerted over the contractor’s license and, if so, whether its use was inconsistent with or in derogation of Walter Homes’ rights in the license.
 

 Parol evidence
 

 In addition to its claim that the district court erred in directing a verdict on its conversion claim, Multi-Family Development argues that the district court improperly permitted Crestdale Associates to present parol evidence of the intent and meaning of the Operating Agreement in defense of Multi-Family Development’s breach of contract claim arising from an alleged breach of the general covenant of good faith and fair dealing. In this, Multi-Family Development claims that the Operating Agreement was clear and unambiguous on its face and was not modified by the course of conduct that followed. In other words, Multi-Family Development asserts that while the Operating Agreement clearly and unambiguously permitted Walter Homes members to engage or invest in other business activities, it did not provide them with the authority to use Walter Homes’ contractor’s license in pursuit of those activities or projects. It therefore asserts that the district court abused its discretion in admitting testimony regarding Allsop’s understanding of Paragraph 6.3 of the Operating Agreement, his discussions with Midby regarding the meaning of the Operating Agreement, and his belief that he was entitled, under the Operating Agreement, to use Walter Homes’ property without disclosing the use to other Walter Homes members. Further, according to MultiFamily Development, Gerrard, Walter Homes’ former attorney, should not have been permitted to testify about the meaning of the Operating Agreement because he lacked personal knowledge on the subject and, accordingly, his testimony was not the best evidence available on the issue. We disagree.
 

 We review a district court’s decision to admit or exclude evidence for abuse of discretion, and we will not interfere with the district court’s exercise of its discretion absent a showing of palpable abuse.
 
 [21]
 
 Under the parol evidence rule:
 

 “parol or extrinsic evidence is not admissible to add to, subtract from, vary, or contradict . . . written instruments which
 
 *914
 
 dispose of property, or are contractual in nature and which are valid, complete, unambiguous, and unaffected by accident or mistake. ...”
 

 Parol evidence is admissible for . . . ascertaining the true intentions and agreement of the parties when the written instrument is ambiguous.
 
 [22]
 

 Parol evidence may, on the other hand, be introduced to “show subsequent oral agreements to rescind or modify a written contract.”
 
 [23]
 
 In addition, Nevada permits the admission of extrinsic oral evidence regarding “ ‘[t]he existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms.’ ”
 
 [24]
 

 Here, both parties used the Operating Agreement as a means of demonstrating whether Walter Homes’ members were authorized to use the license for their own independent projects. The laundry list of evidence that Multi-Family Development cites does not violate the parol evidence rule. Because the agreement was silent as to the ability of corporate members to use the license on other projects, parol evidence was admissible on this point to prove a subsequent oral modification or to resolve a latent ambiguity in the agreement.
 
 [25]
 
 Accordingly, the district court acted within its discretion in admitting evidence concerning the Operating Agreement’s meaning with respect to the contractor’s license.
 

 Crestdale Associates ’ counterclaim for breach of the separate consulting agreement
 

 Multi-Family Development argues that the district court abused its discretion in denying its request to admit into evidence an unexecuted written draft of the consulting agreement that Midby and Allsop attempted to negotiate. In this, it asserts that the proposed evidence constituted the best evidence of the parties’ failure to come to a meeting of the minds as to key elements of the consulting agreement. According to Multi-Family Development, the earlier negotiations between Midby and Allsop, such as those embodied in the proposed draft agreement, are relevant to show the
 
 *915
 
 existence, or in this case, alleged nonexistence, of an oral contract as well as Multi-Family Development’s intention not to pay Allsop a percentage of the profits from the Sienna Villas project.
 

 Under NRS 48.015, relevant evidence is defined as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.’ ’ However, relevant evidence is inadmissible under NRS 48.035(1) “if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury.” As previously indicated, we review a district court’s decision to admit or exclude evidence for abuse of discretion.
 
 [26]
 

 Here, the district court acted within its discretion in refusing to admit the unexecuted draft consulting agreement because allowing the jury to review the document may have resulted in undue confusion, concerning the existence or nonexistence of the oral consulting agreement, creating the potential for prejudice outweighing its probative value. Instead of allowing Multi-Family Development to present the potentially prejudicial evidence, the district court allowed extensive cross-examination of Allsop concerning the draft agreement and the negotiations that led to the oral consulting agreement. Accordingly, we conclude that the district court did not abuse its discretion in refusing to admit the document.
 

 Attorney fees and prejudgment interest
 

 On cross-appeal, Crestdale Associates argues that its offer of judgment justified an award of attorney fees under both NRS 17.115 and NRCP 68. Specifically, it argues that Multi-Family, Walter Homes, and Midby proceeded on a common theory of liability against Crestdale Associates. It submits that the MultiFamily Development plaintiffs filed a joint complaint with the same allegations and causes of action and that, because Midby is the managing member of Multi-Family Development and Walter Homes, he was authorized to decide whether to accept the offer of judgment as to all of the Multi-Family Development parties. Crest-dale Associates further argues that it was entitled to prejudgment interest under NRS 99.040.
 
 [27]
 

 
 *916
 
 We review a district court’s decisions concerning attorney fees and prejudgment interest for an abuse of discretion.
 
 [28]
 

 Initially, under NRS 17.115, a party may recover attorney fees when the opposing party rejects an offer of judgment and fails to recover more than the offer at a subsequent trial. NRCP 68(c)(3) provides that:
 

 An offer made to multiple plaintiffs will invoke the penalties of this rule only if (A) the damages claimed by all the offeree plaintiffs are solely derivative, such as that the damages claimed by some offerees are entirely derivative of an injury to the others or that the damages claimed by all offerees are derivative of an injury to another, and (B) the same entity, person or group is authorized to decide whether to settle the claims of the offerees.
 

 NRS 17.115(9)(b) sets forth a similar rule with respect to multiple plaintiffs. In
 
 Albios v. Horizon Communities, Inc.,
 

 [29]
 

 we determined that in order to invoke the offer of judgment penalty provisions as to multiple plaintiffs, the defendant must show either (1) a single common theory of liability or (2) derivative damages.
 
 [30]
 
 In addition, the defendant is required to show that the same plaintiff was authorized to accept the settlement offer on behalf of all of the plaintiffs.
 
 [31]
 

 Here, Crestdale Associates’ offer of judgment to Multi-Family Development was not apportioned between or among the plaintiffs. Further, it appears that there was a factual dispute as to whether Midby was able to accept settlement offers for all of the plaintiffs because Allsop was a 12.5 percent owner of Walter Homes and the sole member of its Administrative Committee. As a result, Allsop may have been required to approve any settlement offers. In addition, the theories against Allsop for breach of contract arising from the general covenant of good faith and fair dealing were separable from those lodged against Crestdale Associates as a separate entity because Crestdale Associates was not bound by the Operating Agreement that governed the Walter Homes members. Accordingly, the district court did not abuse its discretion in refusing
 
 *917
 
 to award Multi-Family Development attorney fees under NRS 17.115 and NRCP 68.
 
 [32]
 

 As to prejudgment interest, we held in
 
 Paradise Homes v. Central
 
 Surety
 
 [33]
 
 that
 

 The amount of money to which the interest rate will be applied [under NRS 99.040] must be determined by the following factors: (1) if the contract breached provides for a definite sum of money, that sum; (2) if the performance called for in the contract, the value of which is stated in money or is ascertainable by mathematical calculation from a standard fixed in the contract or from established market prices of the subject matter, that sum.
 
 [34]
 

 Later, in
 
 Jeaness v.
 
 Besnilian,
 
 [35]
 
 we applied the
 
 Paradise Homes
 
 formula and reversed a district court decision to award prejudgment interest on a portion of monthly profits from a dry cleaning business plus a portion of its resale value. In particular, we concluded that because the agreement entered into did not provide a definite sum of money, and the value of the performance was neither stated nor ascertainable by mathematical calculation from a standard fixed in the contract or established market prices, prejudgment interest was not recoverable.
 
 [36]
 

 Here, as in
 
 Jeaness,
 
 the amount of money due under the oral consulting agreement between Allsop and Midby was neither definite nor readily ascertainable until judgment. Because the duration of the consulting agreement was unknown at the time when the contract was negotiated, and because Midby was to pay Allsop monthly for his consulting services, Midby did not owe a “definite amount” of money. Further, the mathematical calculation of damages that Crestdale Associates offers is merely its interpretation of the damages due under the oral agreement. Accordingly, we conclude that the district court did not abuse its discretion in refusing
 
 *918
 
 to award Crestdale Associates prejudgment interest under the consulting agreement.
 

 CONCLUSION
 

 In this case, we conclude that a contractor’s license constitutes intangible personal property that can be converted under Nevada law. Despite the fact that the use of a contractor’s license by one individual does not prevent others from using the same contractor’s license, unauthorized use of such a license in contravention of the license holder’s rights may give rise to a cognizable conversion claim. Because the evidence here was not so overwhelming as to demonstrate that Crestdale Associates’ actions did not satisfy the element of “wrongful dominion,” we reverse the district court’s directed verdict as to Multi-Family Development’s conversion claim and remand this matter for a jury trial restricted to that theory of liability. However, we affirm all other aspects of the district court’s order concerning Multi-Family Development’s other claims and Crestdale Associates’ counterclaims concerning attorney fees and prejudgment interest.
 

 Cherry and Saitta, JJ., concur.
 

 [1]
 

 The district court considered the first offer of judgment.
 

 [2]
 

 Multi-Family Development also assigns error to certain alleged trial irregularities. In particular, Multi-Family Development asserts that Crestdale Associates’ expert witness was permitted to revise his opinions at trial without notice, the district court refused to permit proper impeachment, and the district court improperly allowed Crestdale Associates to make a formal closing argument after Multi-Family Development’s rebuttal closing argument. However, Multi-Family Development neglected to address these alleged irregularities in its briefs. Accordingly, we do not discuss them further.
 
 See Carson
 
 v.
 
 Sheriff,
 
 87 Nev. 357, 360-61, 487 P.2d 334, 336 (1971); NRAP 28(a) (providing that briefs must present an argument containing the appellant’s contentions with respect to the issues presented and the reasons therefore, with citations to the record and parts of the record upon which the appellant relies).
 
 *909
 

 See also Edwards
 
 v.
 
 Emperor’s Garden Rest.,
 
 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (explaining that it is the appellant’s responsibility to provide authority and cogent arguments to support its position on appeal).
 

 [3]
 

 NRS 624.260, which governs contractor’s license qualifications, states, in relevant part, that:
 

 1. The Board shall require an applicant or licensee to show such a degree of experience, financial responsibility and such general knowledge of the building, safety, health and lien laws of the State of Nevada and the administrative principles of the contracting business as the Board deems necessary for the safety and protection of the public.
 

 2. An applicant or licensee may qualify [for a contractor’s license] in regard to his experience and knowledge in the following ways:
 

 (b) If a copartnership, a corporation or any other combination or organization, it may qualify by the appearance of the responsible managing officer or member of the personnel of the applicant firm.
 

 3. The natural person qualifying on behalf of another natural person or firm under paragraphs (a) and (b) of subsection 2 must prove that he is a bona fide member or employee of that person or firm and when his principal or employer is actively engaged as a contractor shall exercise authority in connection with his principal or employer’s contracting business in the following manner:
 

 (a) To make technical and administrative decisions;
 

 (b) To hire, superintend, promote, transfer, lay off, discipline or discharge other employees and to direct them, either by himself or through others, or effectively to recommend such action on behalf of his principal or employer; and
 

 (c)
 
 To devote himself solely to his principal or employer’s business and not to take any other employment which would conflict with his duties under this subsection.
 

 (Emphasis added.)
 

 [4]
 

 NRS 624.305, which pertains to unlawful use, assignment, or transfer of a contractor’s license, states:
 

 1.
 
 No license may be used for any purpose by any person other than the person to whom such license is issued,
 
 and no license may be assigned, transferred or otherwise disposed of to permit the unauthorized use thereof.
 

 2. The license of any person who violates any provision of this section shall be automatically cancelled and revoked.
 

 (Emphasis added.)
 

 [5]
 

 Bliss v. DePrang,
 
 81 Nev. 599, 602, 407 P.2d 726, 727-28 (1965).
 

 [6]
 

 Id.
 
 at 601, 407 P.2d at 727.
 

 [7]
 

 University & Cmty. Coll. Sys.
 
 v.
 
 Sutton,
 
 120 Nev. 972, 986, 103 P.3d 8, 18 (2004).
 

 [8]
 

 116 Nev. 598, 5 P.3d 1043 (2000).
 

 [9]
 

 Id.
 
 at 606, 5 P.3d at 1048 (quoting
 
 Wantz v. Redfield,
 
 74 Nev. 196, 198, 326 P.2d 413, 414 (1958) (emphasis added).
 

 [10]
 

 Id.
 

 [11]
 

 Id.
 
 at 606, 5 P.3d at 1048. While we did not expressly reach the issue of whether intangible property constitutes property that can be converted in
 
 Evans,
 
 we nonetheless impliedly determined that intangible property can be converted by determining that a cognizable claim for conversion of securities existed under Nevada law.
 
 Id.
 
 at 606 n.7, 5 P.3d at 1048 n.7.
 

 [12]
 

 See Kremen v. Cohen,
 
 337 F.3d 1024, 1030 (9th Cir. 2003).
 

 [13]
 

 337 F.3d 1024.
 

 [14]
 

 Id.
 
 at 1030.
 

 [15]
 

 Id.
 
 (quoting
 
 Downing v. Municipal Court,
 
 198 P.2d 923, 926 (Cal. Ct. App. 1948) (internal quotation omitted)).
 

 [16]
 

 Id.
 

 [17]
 

 Id.
 

 [18]
 

 Id.
 

 [19]
 

 We note that the Walter Homes Operating Agreement did not supersede the requirement set forth in NRS 624.305 that “[n]o license may be used for any purpose by any person other than the person to whom such license is issued.”
 

 [20]
 

 We reject Crestdale Associates’ argument that, because the jury did not find “wrongfulness” with respect to the other tort claims, there could be no “wrongful dominion.” The element of “wrongful dominion” is distinct from the elements of “wrongfulness” with respect to other torts, and it is for a jury to determine whether the specific elements of conversion exist here.
 
 See Evans v. Dean Witter Reynolds, Inc.,
 
 116 Nev. 598, 606, 5 P.3d 1043, 1048 (2000).
 

 [21]
 

 Sheehan & Sheehan v. Nelson Malley & Co.,
 
 121 Nev. 481, 492, 117 P.3d 219, 226 (2005).
 

 [22]
 

 State ex rel. List v. Courtesy Motors,
 
 95 Nev. 103, 106-07, 590 P.2d 163, 165 (1979) (first alteration in original) (quoting
 
 Wheeler, Kelly & Hagny Inv. Co. v. Curts,
 
 147 P.2d 737, 740 (Kan. 1944) (citations omitted)).
 

 [23]
 

 Silver Dollar Club
 
 v.
 
 Cosgriff Neon,
 
 80 Nev. 108, 110, 389 P.2d 923, 924 (1964).
 

 [24]
 

 Kaldi v. Farmers Ins. Exch.,
 
 117 Nev. 273, 283, 21 P.3d 16, 22 (2001) (quoting
 
 Crow-Spieker #23
 
 v.
 
 Robinson,
 
 97 Nev. 302, 305, 629 P.2d 1198, 1199 (1981)).
 

 [25]
 

 See Glenbrook Homeowners
 
 v.
 
 Glenbrook Co.,
 
 111 Nev. 909, 916, 901 P.2d 132, 137 (1995).
 

 [26]
 

 Sheehan & Sheehan,
 
 121 Nev. at 492, 117 P.3d at 226.
 

 [27]
 

 NRS 99.040 states, in relevant part, that:
 

 1. When there is no express contract in writing fixing a different rate of interest, interest must be allowed at a rate equal to the prime rate at the largest bank in Nevada, as ascertained by the Commissioner of Financial Institutions, on January 1 or July 1, as the case may be, immediately preceding the date of the transaction, plus 2 percent, upon all money from the time it becomes due, in the following cases:
 

 (a) Upon contracts, express or implied, other than book accounts.
 

 [28]
 

 Richardson Constr. v. Clark Cty. Sch. Dist.,
 
 123 Nev. 61, 64 n.5, 156 P.3d 21, 23 n.5 (2007) (citing
 
 Bergmann v. Boyce,
 
 109 Nev. 670, 674, 856 P.2d 560, 563 (1993));
 
 McCarran Int’l Airport v. Sisolak,
 
 122 Nev. 645, 675, 137 P.3d 1110, 1130 (2006).
 

 [29]
 

 122 Nev. 409, 132 P.3d 1022 (2006).
 

 [30]
 

 Id.
 
 at 422, 132 P.3d at 1031.
 

 [31]
 

 Id.
 

 [32]
 

 We note that Multi-Family Development raises an issue as to which of Crestdale Associates’ offers of judgment should have been considered in determining whether attorney fees were warranted. However, given that neither of Crestdale Associates’ offers of judgment were apportioned between the plaintiffs and Midby may not have had the ability to accept an offer of judgment as to all of the plaintiffs, we do not reach the issue of which offer of judgment should have been considered here.
 

 [33]
 

 84 Nev. 109, 437 P.2d 78 (1968).
 

 [34]
 

 Id. at 116, 437 P.2d at 83.
 

 [35]
 

 101 Nev. 536, 706 P.2d 143 (1985).
 

 [36]
 

 Id.
 
 at 541, 706 P.2d at 147.