# IN THE SUPREME COURT OF THE STATE OF NEVADA

BRUCE BRINKERHOFF,
INDIVIDUALLY,
Appellant,
vs.
DARREN FOOTE,
Respondent.

No. 68851

FILED

DEC 2 2 2016

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a final judgment in a breach of contract action. Second Judicial District Court, Washoe County; Janet J. Berry, Judge.

### FACTS AND PROCEDURAL HISTORY

Darren Foote founded Water Extraction Technologies (W.E.T.) and later sought Bruce Brinkerhoff as co-owner and financial manager. In mid-2003, Foote and Brinkerhoff orally negotiated the purchase price for half of W.E.T.'s stock. Foote produced evidence that he and Brinkerhoff negotiated a buy-in of $400,000. The agreement first required Brinkerhoff to pay half the purchase price up-front followed by yearly installments of $50,000 for four years; however, it was then modified to require installments of $40,000 for five years. Foote presented evidence that, in 2003, Brinkerhoff began making payments on his buy-in through his company, Ryvis. But soon after, the parties modified the agreement so that Brinkerhoff could repay the buy-in debt through credits for Brinkerhoff's salary in 2003 ($21,000) and 2004 ($42,000), and the remaining debt would be paid when funds became available.

Starting in 2003, Brinkerhoff acted as W.E.T.'s chief financial officer, and Ryvis handled W.E.T.'s payroll. However, the parties agreed

16-39924

that Foote was to remain W.E.T.'s sole owner and receive all profits through December 31, 2004. Brinkerhoff told Foote that Foote was entitled to W.E.T.'s 2003 profits and receivables—which included $85,000 already collected and $100,000 that had not yet been billed. Foote stated that he left this money with W.E.T. because Brinkerhoff informed him that W.E.T.'s cash funds were limited. Foote presented evidence that he later discovered that the 2003 profits and receivables he was entitled to actually totaled $218,000, and Foote approximated that W.E.T.'s 2004 profits totaled $717,364.35.

In 2007, Foote and Brinkerhoff decided to sell W.E.T. to Belfor for $2,070,000. The parties agreed that Belfor would pay an initial payment of $1,070,000 and the remaining balance would be due in installments over four years. During those four years, Brinkerhoff was to handle W.E.T.'s outstanding payables and receivables, as well as distribute the remaining profits equally.

Prior to the sale, Foote provided Brinkerhoff with a spreadsheet detailing the amount that he believed he was still owed for 2003 profits, 2004 profits, and Brinkerhoff's buy-in. Foote testified that Brinkerhoff then threatened to bankrupt the company instead of paying Foote. After the sale closed, however, Brinkerhoff distributed $216,313.06 of Belfor's initial payment to Foote, and Foote received his portion of the Belfor installments through 2011.

Brinkerhoff sent Foote two emails outlining expenditures from the initial Belfor funds, the leftover funds, and the amount Brinkerhoff claimed he was owed. One email specifically stated that W.E.T. used $320,000 of the initial Belfor funds for payables and listed the remaining Belfor funds as $79,683.97.

 

Foote hired a forensic accountant in 2009 to review W.E.T.'s financial records. The accountant notified Brinkerhoff and Foote of significant discrepancies and asked Brinkerhoff to provide additional information. Foote provided evidence that Brinkerhoff refused to provide the information unless Foote promised not to use it against him. In 2010, Foote concluded that the incongruities indicated that Brinkerhoff had misappropriated W.E.T.'s funds.

Foote sued Brinkerhoff for negligence, breach of contract, breach of the covenant of good faith and fair dealing, conversion, breach of fiduciary duty, and constructive fraud. Brinkerhoff filed his amended answer and affirmative defenses, but did not raise any issues pertaining to standing. Subsequently, Brinkerhoff unsuccessfully moved the district court for judgment as a matter of law arguing that Foote lacked standing to raise several claims because they were derivative in nature.

At trial, Foote argued and presented evidence that Brinkerhoff failed to pay $126,000 of the price for his 50 percent share of the stock in W.E.T. In addition, Foote's expert witness, the forensic accountant, made several notable statements. First, the accountant reported that W.E.T.'s books appeared inconsistent and incorrect, that there were missing bank statements, and that some of the errors may have been intentional. Second, he testified that according to his review of the parties' emails, Foote and Brinkerhoff agreed to the $400,000 buy-in and calculated that Brinkerhoff still owed approximately $128,000. Third, the accountant stated that from the $1,070,000 that Belfor paid W.E.T. in 2007, he could not account for $79,976.57. Fourth, the accountant testified that W.E.T.'s financial records revealed that Brinkerhoff's company, Ryvis, was

overpaid $101,490.09, of which Foote was owed $50,745.05. Finally, he stated that Foote was owed the 2004's profits of $717,364.35.

The jury found Brinkerhoff liable to Foote for the following claims and corresponding damage awards:

| | |
|---|---|
| Breach of contract: | $126,000 |
| Breach of good faith and fair dealing: | $218,000 |
| Conversion: | $235,505 |
| Breach of fiduciary duty: | $80,000 |
| Constructive fraud: | $51,000 |

## DISCUSSION

*Brinkerhoff waived the issue of standing on the derivative clams because he failed to allege the issue in his pleading*

Brinkerhoff asserts that Foote failed to comply with the procedural requirements of a derivative suit and thus lacks standing. We do not reach this claim because it has been waived.

We have previously held that an allegation of lack of standing due to failing to comply with procedural requirements must be pleaded affirmatively and with particularity at the pleadings stage. *Contrail Leasing Partners, Ltd. v. Exec. Serv. Corp.*, 100 Nev. 545, 549 n.2, 688 P.2d 765, 767 n.2 (1984). Failure to so allege constitutes waiver of the claim. *Id.*

Brinkerhoff first alleged Foote's lack of standing in his motion for judgment as a matter of law. Because Brinkerhoff failed to raise this affirmative defense at the pleadings stage, he waived the issue of standing.

 

*Substantial evidence supported Foote's claims[1]*

A jury's verdict, when supported by substantial evidence, will not be overturned unless the verdict is "clearly erroneous when viewed in light of all the evidence presented." *Powers v. United Servs. Auto. Ass'n*, 114 Nev. 690, 698, 962 P.2d 596, 601 (1998), *modified on denial of reh'g*, 115 Nev. 38, 979 P.2d 1286 (1999). "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion." *Whitemaine v. Aniskovich*, 124 Nev. 302, 308, 183 P.3d 137, 141 (2008). This court will "also assume that the jury believed all the evidence favorable to the prevailing party and drew all *reasonable* inferences in [that party's] favor." *Bongiovi v. Sullivan*, 122 Nev. 556, 581, 138 P.3d 433, 451 (2006) (alterations in original) (internal quotation marks omitted). This court "need not determine how the jury reached its conclusion, . . . we need only determine whether it was possible for the jury to do so." *M & R Inv. Co. v. Anzalotti*, 105 Nev. 224, 226, 773 P.2d 729, 731 (1989) (internal quotation marks omitted).

*Breach of contract and implied covenant of good faith and fair dealing*

At trial, Foote presented evidence that Brinkerhoff still owed Foote $126,000 under the buy-in agreement and $218,000 for 2003 receivables and 2004 profits. The jury awarded Foote $126,000 in connection with his claim for breach of contract and $218,000 in connection with his claim for breach of the implied covenant of good faith

---

[1]We have also considered Brinkerhoff's claims regarding the statute of limitations and conclude that the applicable statutes are not implicated. Moreover, while Brinkerhoff does not dispute the merits of Foote's constructive fraud claim, we conclude that substantial evidence supported the damage award.

and fair dealing. Brinkerhoff argues that this award demonstrates that Foote did not present sufficient evidence to prove an issue for the jury regarding an alleged offer and acceptance, or meeting of the minds, with respect to Foote's retention of the 2003 receivables or 2004 profits. If the jury had made this determination, he alleges, the jury would have awarded Foote the entire $344,000 for his breach of contract claim. We disagree.

Whether a contract exists is a question of fact and requires "this court to defer to the district court's findings unless they are clearly erroneous or not based on substantial evidence." *May v. Anderson*, 121 Nev. 668, 672-73, 119 P.3d 1254, 1257 (2005). For an enforceable contract, there must be "an offer and acceptance, meeting of the minds, and consideration." *Id.* at 672, 119 P.3d at 1257. "A meeting of the minds exists when the parties have agreed upon the contract's essential terms." *Certified Fire Prot., Inc. v. Precision Constr., Inc.*, 128 Nev. 371, 378, 283 P.3d 250, 255 (2012). When the parties settle the material terms, a contract is formed even if the "exact language is not finalized until later." *May*, 121 Nev. at 672, 119 P.3d at 1257.

"[A]ll contracts impose upon the parties an implied covenant of good faith and fair dealing." *Nelson v. Heer*, 123 Nev. 217, 226, 163 P.3d 420, 427 (2007). This covenant "prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other." *Id.* To succeed on a claim of breach of the implied covenant of good faith and fair dealing, the plaintiff must prove that the defendant occupied a "superior or entrusted position" to the plaintiff and that the defendant "has engaged in grievous or perfidious misconduct." *State, Univ. & Cmty. Coll. Sys. v. Sutton*, 120 Nev. 972, 989, 103 P.3d 8, 19 (2004) (internal quotation marks omitted).

SUPREME COURT
OF
NEVADA

(O) 1947A

We first conclude that substantial evidence supported the existence of a contract for the 2003 receivables/profits. Foote presented an email from Brinkerhoff that stated Foote would receive $85,000 from the 2003 receivables that were collected in 2004. In the same email, Brinkerhoff estimated that W.E.T. had about another $100,000 in receivables that had not yet been billed. This evidence shows that the parties agreed that Foote would retain W.E.T. receivables/profits from the time before Brinkerhoff became a shareholder.

Brinkerhoff's main contention is that he and Foote did not have a meeting of the minds regarding how the amount of receivables/profits due to Foote would be calculated. However, this argument is unavailing. As the CFO, Brinkerhoff presumably had access to all of W.E.T.'s financial records and could have easily determined how W.E.T. had historically defined receivables/profits. Had Brinkerhoff objected to the manner of calculation then he should have voiced his objection instead of waiting until Foote filed his complaint. Moreover, Brinkerhoff estimated that Foote should receive $85,000 for the 2003 receivables plus whatever else was collected from the $100,000 for the 2003 receivables that had not yet been billed. Brinkerhoff's estimate and Foote's claimed damages of $218,000 were only $33,000 apart. Hence, Brinkerhoff's calculations were not radically different from Foote's.

We further conclude that substantial evidence supports Foote's claim for breach of the implied covenant of good faith and fair dealing. Brinkerhoff served as CFO of W.E.T., an entrusted position. When Brinkerhoff failed to distribute the 2003 and 2004 profits to Foote, he disadvantaged Foote through an unfair act.

As to the awarded damages, Foote presented evidence that Brinkerhoff still owed Foote $126,000 under the buy-in agreement, and that W.E.T.'s ledgers actually showed that the 2003 receivables/profits totaled $218,000. This evidence supports the jury's awards of $126,000 and $218,000. That the jury awarded $218,000 under the claim for breach of the implied covenant of good faith and fair dealing instead of the claim for breach of contract is irrelevant because the evidence supports the award. Therefore, we will not reverse the district court's judgment.

*Breach of fiduciary duty*

Brinkerhoff argues that Foote's fiduciary duty claim is not supported by substantial evidence because the jury's damage award—$80,000—is based on a balance Brinkerhoff listed in an email and which Brinkerhoff asserts was rightfully owed to him. We disagree.

Members of a joint venture generally owe each other fiduciary duties, including "the duty of loyalty for the duration of their venture." *Leavitt v. Leisure Sports Inc.*, 103 Nev. 81, 86, 734 P.2d 1221, 1224 (1987). "[T]he duty of loyalty requires the board and its directors [or officers] to maintain, in good faith, the corporation's and its shareholders' best interests over anyone else's interests." *Schoen v. SAC Holding Corp.*, 122 Nev. 621, 632, 137 P.3d 1171, 1178 (2006). After hearing all the evidence, the fact-finder must determine that "(a) [t]he [fiduciary's] act or failure to act constituted a breach of his or her fiduciary duties . . . ; and (b) [t]he breach of those duties involved intentional misconduct, fraud or a knowing violation of law." NRS 78.138(7); *see also Leavitt*, 103 Nev. at 86, 734 P.2d at 1224.

Brinkerhoff owed a fiduciary duty to Foote because he served as the CFO of W.E.T. and because he was a partner in a joint venture with

Foote. Additionally, retaining funds left over from the company's sale is a breach of the duty of loyalty because Brinkerhoff gave himself a benefit instead of distributing the benefit between himself and the other shareholder in the company. The jury accepted the evidence that Foote presented and discounted Brinkerhoff's evidence to the contrary.

Brinkerhoff's argument that the jury based its $80,000 damages award on a balance he listed in an email is mere supposition. As Foote correctly states, the jury heard ample evidence to justify an award greater than $80,000. We accordingly conclude that substantial evidence supported Foote's fiduciary duty claim.

*Conversion*

Brinkerhoff argues that the $235,505 jury award for conversion was not supported by substantial evidence. He claims that this amount represents W.E.T. receivables which Foote claimed Brinkerhoff wrongfully kept for himself. Brinkerhoff claims that the jury erred in finding these damages because W.E.T.'s receivables were used to pay W.E.T.'s payables, which exceeded the receivables by $38,091 as of October 10, 2007.

Conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein *or* in derogation, exclusion, or defiance of such title or rights." *M.C. Multi-Family Dev., LLC v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 910, 193 P.3d 536, 542 (2008) (internal quotation marks omitted). "[C]onversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge." *Id.* at 910-11, 193 P.3d at 542-43 (internal quotation marks omitted). The jury

determines whether an act of conversion occurred. *Id.* at 911, 193 P.3d at 543.

Foote presented evidence that W.E.T. paid $320,000 of the payables using Belfor's initial payment, so at least that amount was double-counted as being paid from the W.E.T.'s payables. Further, because the expert witness testified that W.E.T.'s financial records were incorrect and inconsistent, the jury could reasonably conclude that Brinkerhoff converted at least the amount awarded, $235,505. Therefore, substantial evidence supported Foote's claim of conversion.

*CONCLUSION*

We conclude that the derivative claims argument is waived because it was not raised earlier, and that substantial evidence supports all of Foote's claims against Brinkerhoff. Accordingly we,

ORDER the judgment of the district court AFFIRMED.[2]

_____, J.
Cherry

_____, J.
Douglas

_____, J.
Gibbons

---

[2]We have reviewed Brinkerhoff's remaining arguments that (1) the claims for breach of contract and breach of implied covenant and good faith and fair dealing fail as a matter of law, (2) the district court committed instructional error, and (3) the attorney's fees and costs should be reversed. We conclude that they are without merit.

cc: Hon. Janet J. Berry, District Judge
Lansford W. Levitt, Settlement Judge
Laxalt & Nomura, Ltd./Reno
Law Offices of Mark Wray
Washoe District Court Clerk